## Bagley *v.* Reno Oil Company, Appellant.

*Corporations—By-laws—Change in number of directors—Notice—Annual meeting.*

A change in the by-laws of a corporation increasing the number of directors cannot be made at a regular or annual meeting of the stockholders, in the absence of notice previously given of the change contemplated.

A rule of a corporation providing that the by laws might be amended with the written consent of the owners of three fifths in number of the shares of the company, given in writing, filed with the secretary and recorded in the minutes of the proceedings of the company, is not complied with by a vote of three fifths of the shares cast by ballot at an annual meeting of the stockholders in favor of an amendment, without any notice of the proposed change having been previously given.

Argued Oct. 15, 1901.   Appeal, No. 74, Oct. T., 1900, by defendants, from decree of C. P. Venango Co., on bill in equity in case of Katherine C. Bagley et al. v. Reno Oil Company et al. Before McCOLLUM, C. J., MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ.   Reversed.

Bill in equity for the appointment of a master to supervise a corporate election.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court confirming the master's report.

*S. S. Mehard,* with him *J. W. Lee, Isaac Ash, P. M. Speer* and *Joseph McSweeney,* for appellant.—The by-laws of defendant company could not be lawfully amended, and the number of directors increased at the annual meeting of stockholders, without previous notice given of the purpose to offer such amendment: Sampson v. Bowdoinham Steam Mill Corporation, 36 Me. 78; Warner v. Mower, 11 Vt. 385; People's Mutual Ins. Co. v. Westcott, 14 Gray, 440.

The statute law in Pennsylvania is declaratory of the common law in this respect: Act of April 29, 1874, P. L. 77; Act of May 31, 1887, P. L. 281; Act of May 14, 1891, P. L. 63.

*William J. Breene,* with him *W. H. Forbes, P. A. Wilbert* and *John J. Henderson.*—Every reasonable presumption will be made in favor of the regularity of the proceeding of the corporation and the election of its officers: 1 Morawetz on Corporations, sec. 487; Blanchard v. Dow, 32 Me. 557; Ashtabula, etc,, R. R. Co. v. Smith, 15 Ohio, 328; Lane v. Brainerd, 30 Conn. 565; 2 Cook on Corporations, sec. 606; 1 Thompson on Corporations, sec. 789.

Corporators have power to .enact by-laws at an annual meeting: 1 Thompson on Corp. sec. 956; Salem Bank v. Gloucester Bank, 17 Mass. 1.

By-laws may be repealed by vote of the same authority which made them: Rex v. Ashwell, 12 East, 22; Smith v. Nelson, 18 Vt. 511; 1 Morawetz on Corp. sec. 499; U. S. v. Ballou, 144 U. S. 1.

OPINION BY MR. JUSTICE BROWN, January 6, 1902:

This bill was filed by the appellees for the appointment of a master to supervise the election of directors by the stockholders of the Reno Oil Company at the annual meeting held January 18, 1900. The appointment was made and the master at-

tended the meeting; but, before proceeding to elect directors, a resolution was offered, amending the by-laws by increasing the number of directors from nine to eleven. No notice had been given of this proposed change, but a vote was taken and the amendment was adopted; whereupon the stockholders proceeded to elect five instead of three directors. The master held that under his appointment, his authority did not extend to the supervision of the vote on this proposed change in the by-laws; but, in passing upon the validity of the election of the directors who, the appellees claim, were elected, he did consider and pass upon the validity of the amendment, because it involved the legality of the election of the five directors. There was no provision in the by-laws for their amendment; but there was a rule of the company, under its contract of consolidation with the American Petroleum Company, that an amendment could be made with the written consent of the owners of three fifths in number of the shares of the company, given in writing, filed with the secretary and recorded in the minutes of the proceedings of the company. The master was of opinion that, as the holders of three fifths of the shares had cast their ballots in favor of the proposed amendment, there had been a compliance with this rule; but there had not been, for no consent of the owners of three fifths in number of the shares of the company had been given in writing that had been filed with the secretary and recorded in the minutes of the proceedings of the company. The by-laws were not amended as required by the rule referred to, and the first and fundamental question raised by the appellants is, whether the by-laws of the company could " be lawfully amended and the number of directors increased at the annual meeting of stockholders, without previous notice given of the purpose to offer such amendment."

The by-laws of a corporation are the rule of its life. It comes into being through some general or special statute, with its charter as the evidence of its existence, and one of its necessary and inseparable incidents is the power to make by-laws which become its private statutes for its own government, unless contrary to the laws of the land: 1 Blackstone, 476; 2 Kent, 278. By its by-laws the management of a corporation's affairs is regulated and most frequently, as in the present case, its directors or managers are chosen in accordance with their provisions.

They are adopted in the first instance by the members of the association, at a meeting where, if all do not attend, all must, at least, have an opportunity to be present, and when adopted, they become as binding upon every member as the charter itself, into which they are written as the association's rule of conduct. A corporation may begin to live the moment its charter issues, but it may not be able to act for the purposes of its creation until those to whom the franchises are given, and who make up its corporate existence, have agreed how it shall act, what it shall do and who shall immediately direct its conduct. The agreement of the members of a corporation as to what shall be its mode of life is found in its by-laws, and their first and most important duty is to adopt them. In some instances, there may be found in the charter itself provision for the election of directors who are to manage the affairs of the company; but, in the absence of any such provision, as in the case now before us, the by-laws provide for the number and the time and mode of the election of those to whom are committed the interests of stockholders and the active management of the association. By-laws, having once been adopted, become the permanent rule to govern the association's conduct, and every member of it ought to be able to so regard them, and to feel that they will be neither repealed nor amended without notice to him of an intention to do so, even at a regular or annual meeting of the stockholders. Upon the by-laws, as adopted and regulating the affairs of a corporation in which a stockholder has invested his money, he relies for a management as therein provided, and it is not reasonable that even at a regular or annual meeting, radical changes should be made, without notice to him of such contemplated action. By experience and observation, we know that, at these regular annual meetings, only the general routine of business is transacted, and the corporation passes from one year of its existence into the next, with the by-laws regulating the number of its directors and its general management unchanged. A majority of stockholders rarely attend in person. Their proxies are given to attorneys to vote for them on the usual and ordinary questions and matters that arise. If one or more stockholders contemplate action of an unusual or extraordinary character, it is but reasonable that their associates should have notice that radical, and, what may prove disastrous

changes, are contemplated, and that an effort will be made to effect them. If such changes are made with the approval of a majority of the stockholders upon notice to all, they affect and bind all; but they should not be made until all have had an opportunity to be heard by receiving notice of what changes will be attempted, unless provision be made for them in the by-laws: Cook on Stock and Stockholders and Corporation Law (2d ed.), sec. 595. No more radical change can be made in the management of the affairs of a corporation than an increase in the number of its directors as fixed by its by-laws. Such increase may result in taking the control of a prosperous business from the hands of those who have successfully conducted it, and committing it to those who, with different notions, may lead it into ruin and disaster; honest management may be followed by a dishonest one; prodigality may take the place of frugality; a sense of security may be succeeded by unrest; and where all was right, everything may be wrong. Such changes, with such possible results to stockholders, ought not to take place before notice given of what the majority may do, and to which the minority must bow, if unable to avert the changes, after having had an opportunity to be heard and to act.

A change in the by-laws, increasing the number of directors of a corporation, being manifestly of great importance, extraordinary and out of the usual business transacted at a regular or annual meeting of the stockholders, the weight of authority seems to be, as it ought to be, that in the absence of notice previously given, it cannot be made. In People's Mutual Ins. Co. v Wescott, 14 Gray, 440, a meeting of a mutual fire insurance company having been called " for the purpose of making alterations in the by-laws, and for the transaction of such business as may come before them," and the number of directors which had not been limited by the by-laws, having been increased at the meeting and the additional directors elected, it was held: " But a decisive objection to the choice of these new directors is, that in the call for the meeting at which they were chosen there was no intimation of any purpose to make such an election. The only specific subject of action named was the alteration of the by-laws. There was no by-law limiting the number of directors, and no new by-law was adopted respecting the number to be chosen, or altering the time of holding the annual

meeting. A measure of such importance to the members of the company, which might transfer the whole corporate power to new hands, could not fairly be embraced in the phrase 'for the transaction of such business as may come before them.'"

"It is unnecessary to notify the shareholders of the particular business to be brought before an ordinary or general meeting, unless it be of great importance, and of an extraordinary character. In the latter case, the object of the meeting must be specified:" Morawetz on Private Corporations, section 359. "Although, when a day certain is appointed for a particular business, no notice may be necessary when that alone is to be transacted, or the mere ordinary affairs of the corporation are to be acted upon; yet when the intention is to do other acts of importance, a notice of it is required. The election or amotion of an officer, the making of a by-law, or any act of similar importance, on any day not expressly set apart for that particular transaction is illegal and void:" Angell & Ames on Corporations, section 489. "In general, the notice need not specify the business to be considered where the meeting is one prescribed by charter or where the business is prescribed by charter or statute or by-law; and, no unusual business is to be transacted. But if the meeting is to be held at a time not provided by the charter, or if unusual business is to be transacted at a meeting which is a customary one, the call must specify particularly such unusual business;" Cook on Stock and Stockholders and Corporation Law (2d ed. ), section 595. "In the case of the former [corporate meetings], provided for by the laws of the association, all members are bound to take notice of both time and place of holding them, where both are specified by the by-laws, as well as of the usual character of the business to be transacted at such meetings; but where matters not usually brought up at such meetings are to be considered, and where their objects are to be defined by express provision of the by-laws, special notice of the subjects intended to be submitted should be given;" Endlich on Building Associations, (2d ed.), section 159. Our act of assembly of April 29, 1874, P. L. 77, section 5, providing that "the members of said corporation may, at a meeting to be called for that purpose, determine, fix or change the number of directors or trustees that shall thereafter govern its affairs;" that of May 31, 1887, P. L. 281, section 1,

"that it shall be lawful, from and after the passage of this act, for any corporation, chartered or existing by or under any law of this state, to determine, by the vote of its stockholders holding a majority in interest of all of its stock, at a meeting duly called for the purpose, the time of holding the annual meeting for the election of officers of the corporation, and the number of directors that shall thereafter govern its affairs;" and that of May 14, 1891, P. L. 63, section 5, that "the members of said corporation may, at a meeting to be called for that purpose, determine, fix or change the number of directors or trustees that shall thereafter govern its affairs,"—all indicate the great importance, recognized by the legislature, to the stockholders of a corporation of fixing and changing the number of directors, and are but declaratory of the unwritten law, which always has reason as its foundation. We are of the opinion that the amendment of the by-laws of the Reno Oil Company, increasing the number of directors, was invalid for want of notice to the stockholders, and that the election of the five directors cannot be sustained. The other two questions need not be considered. The decree of the court below that James R. Adams, James R. Gilmore, Frederick J. Lancaster, W. H. Forbes and C. E. Hamford were duly elected as directors of the Reno Oil Company on January 18, 1900, is reversed, the cost on this appeal and of the proceedings below to be paid by the Reno Oil Company.