**STOCKHOLDERS COMMITTEE FOR BETTER MANAGEMENT OF ERIE TECHNOLOGICAL PRODUCTS, INC., et al., Plaintiffs,**

v.

**ERIE TECHNOLOGICAL PRODUCTS, INC., et al., Defendants.**

**Civ. A. No. 42-65.**

United States District Court
W. D. Pennsylvania.

Nov. 30, 1965.

 

Silin, Eckert and Burke, by William H. Burke, Erie, Pa., for plaintiffs.

McDonald and Illig, by Gifford, Graham, Irving Murphy, Erie, Pa., for defendants.

WEBER, District Judge.

This diversity stockholders' action involves the question of the extent to which the directors and majority shareholders of a Pennsylvania corporation may legally diminish the right of cumulative voting. Plaintiffs are four shareholders of defendant corporation who bring this action on their own behalf and also as a representative action on behalf of other minority shareholders whose proxies they held at the last annual meeting. Defendants are the corporation and three of its Directors who are alleged to represent a majority group of the shareholders because of the beneficial ownership of a majority of the outstanding shares by them and persons related to them.

The Court finds that the requisite diversity of citizenship and amount in controversy exists to sustain jurisdiction.

The matter is presently before the court on defendants' Motion for Summary Judgment on all counts of the Complaint, and upon Plaintiffs' Cross-Motion for Partial Summary Judgment as to certain counts. From the record, including exhibits, affidavits, and depositions of the Plaintiffs taken by Defendant, the court is of the opinion that there are no genuine disputes as to any material facts and that the entire matter is ripe for full disposition by Summary Judgment.

Prior to 1951 defendant corporation was a closely held corporation, the shares of which were held largely by members of the family of its founders. In 1951 the corporation "went public" under the provisions of the regulations of the Federal Securities and Exchange Commission, and since that time a substantial portion of its common stock was sold to the general public, which now includes the plaintiffs. The stock is not listed for trading on any public stock exchange. At the present time a majority of the outstanding shares are owned by the officers and directors of the corporation or persons related to them.

Prior to 1965 the By-laws of the corporation provided for a Board of Directors of no less than five nor more than nine directors, which number was to be set annually by the shareholders. The By-laws also provided that they could be amended by the Board of Directors. From 1953 to 1961 the corporation had not less than six directors, and since 1961 not less than seven.

Plaintiffs in 1964 communicated with management and expressed their desire to participate in the affairs of the company. They sought representation on the Board of Directors. They at that time owned 23,431 shares out of a total of 895,524 shares outstanding. At the 1964 annual meeting they held about 60,000 proxies, but they withdrew their candidate when it was obvious that they could not elect one director. The plaintiffs'

communications with management continued.

At the meeting of the Board of Directors on February 1, 1965 the By-laws of the corporation were amended to provide for a Board of Directors of not less than six nor more than nine directors, divided into annual classes of not less than two nor more than three, the number to be determined from time to time by the Board of Directors. At this time a resolution was passed providing that at the annual meeting of shareholders of May 3, 1965, there should be elected two directors for a three year term, two directors for a two year term, and three directors for a one year term.

A proxy solicitation contest followed. The Notice of Annual Meeting, issued March 30, 1965, listed for shareholder action the ratification of the aforesaid By-law amendment, and called for the election of directors, two for three year terms, two for two year terms, and three for a one year term, in accordance with the prior resolution.

At the annual meeting the Plaintiffs spoke in opposition to the Amendment, but it was ratified by a vote of 687,438 to 158,222. In the voting for the first two classes of directors, in which two were to be elected, the two leading candidates received 707,999 votes each, while plaintiffs' candidate received 276,864. It thus appeared that plaintiffs' voting strength was 138,432 shares out of a total of 846,431 voting, enough to have elected one of seven directors. Thus, while the plaintiffs might have placed one representative on the Board of Directors under its former make-up of seven members, they were unable to do so under the new composition of the board.

Plaintiffs have pleaded their cause of action in four counts summarized as follows:

I. That the individual defendants, Fryling, as directors, were motivated by personal interests of themselves and their family group as owners of a majority stock interest, and acted pursuant to that interest to prevent the election of plaintiffs' representative to the Board of Di-

rectors by diminishing the cumulative voting power of the stock.

II. That the actions taken by the defendant corporation and the results were in violation of constitutional and statutory standards, or are illegal as contrary to public policy by reason of the purpose for which they were taken.

III. That defendant directors are guilty of misrepresentations in the proxy solicitation compaign.

IV. That defendants as directors and majority stockholders violated a fiduciary duty to protect the interests of minority shareholders in the dilution of the strength of the cumulative voting power.

The right of cumulative voting is of statutory origin; it was unknown at common law. Pennsylvania, along with a few other states, has it set forth in its state constitution:

*Art. 16 § 4.* "In all elections for directors or managers of a corporation each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates, as he may prefer." Purdon's Penna. Statutes: Constitution Art. 16, § 4, P.S.

Applicable sections of the Pennsylvania Business Corporation Law are as follows:

*15 P.S. § 2852–401.* Board of directors.

"The business and affairs of every business corporation shall be managed by a board of at least three directors * * *"

*15 P.S. § 2852–403.* Classification of directors.

"If the articles or by-laws of a business corporation so provide, the directors of the corporation may be classified in respect to the time for which they shall severally hold office, except that the first directors shall serve only until the first annual meeting. In such case, each class shall be as nearly equal in number as possible, the term of office of at least one class shall expire in each year, and the members of a class shall not be elected for a shorter period than one year, or for a longer period than four years. If, at any meeting of shareholders, due to a vacancy or vacancies, or otherwise, directors of more than one such class are to be elected, each class of directors to be elected at the meeting shall be elected in a separate election."

*15 P.S. § 2852–402.* Number, qualifications, and election of directors.

"Subject to the provision of this act, the number, qualifications, terms of office, manner of election, time and place of meeting, compensation, and powers and duties of the directors may be prescribed from time to time by the by-laws. Except as otherwise provided in the by-laws:

\*     \*     \*     \*     \*     \*

(2) The number of directors shall be the same as that stated in the articles."

*15 P.S. § 2852–304.* Adoption and contents of by-laws.

"The shareholders shall have the power to make, alter, amend, and repeal the by-laws of a business corporation, but the authority to make, alter, amend, and repeal by-laws may be expressly vested by the articles or the by-laws in the board of directors, subject always to the power of the shareholders to change such action. * * * The by-laws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles * * *"

Article VII of the By-Laws of Defendant corporation provided as follows:

"These by-laws, or any of them, may be altered, amended, or repealed by the shareholders of the corporation or by the Board of Directors, provided that any alteration, amendment or repeal of by-laws by action

of the Board of Directors may be changed by the shareholders."

The plaintiffs have argued that while certain of the actions of the Directors may have been within their legal authority, they were done for the motive of excluding plaintiffs from representation on the Board of Directors, and not for an otherwise valid corporate purpose. Defendants have countered with affidavits from all of the directors to the effect that they were of the opinion that the election of a representative of plaintiffs would be against the best interests of all the shareholders of the corporation. For the purpose of this decision we will accept the premise that the action taken by the directors was taken for the specific purpose of diminishing the cumulative voting power of plaintiffs so that with their voting strength they would be unable to elect a director.

■ Assuming that the defendants did wish to diminish the power of the cumulative voting strength of plaintiffs, we can see no grounds to sustain plaintiffs' fourth count in the complaint. This count is based upon a theory of a fiduciary relationship between the directors and the minority shareholders to the effect that the directors will not exercise their control adversely to the interests of the minority shareholders. There is no allegation of fraud, misuse of corporate assets, mismanagement, or breach of any express or implied contractual rights here. There is no allegation in this count of an invasion of a statutory right. It is not alleged that the right of cumulative voting has been completely denied. At best the allegation amounts to a claim that the defendant directors, representing the voting power of a majority of the shareholders, have acted to strengthen their control of the corporate affairs. It is further alleged that the majority's personal interests are averse to wider trading of the stock and listing on a public exchange which would, in plaintiffs' opinion, enhance its market value. Yet, we fail to see how any legally protected interests of plaintiffs are thereby invaded. Plaintiffs are affected in the same way that all other shareholders are affected. Having chosen to embark upon a financial venture on this particular vessel, they have cast their fortunes with the rest of the shareholders on this voyage and are bound by business policies which the legally chosen representatives have taken which affect all shareholders alike. The fact that plaintiffs may have a speculative interest in trading in the stock which is not shared by a majority of the stockholders, or the directors, is no invasion of any legal or equitable rights. We shall consider the actual legality of the procedures under the other counts, but we find no grounds for equitable relief under any fiduciary theory.

■ The third count of the complaint alleges that misrepresentations were made in the proxy solicitation materials circulated by the defendant corporation's management. We have examined all of the solicitation material submitted in connection with the proxy solicitation contest, and we find nothing more than expressions of opinion; we do not find them to be false or misleading with respect to any material facts which would influence a shareholder's vote. In any event, we believe that any such misrepresentation, if it did exist, would give a cause of action only to such shareholders who gave proxies to defendants in reliance upon the false misrepresentation, to their injury. Commonwealth ex rel. Laughlin v. Green, 351 Pa. 170, 40 A.2d 492 (1945). No such persons are claiming here.

■ We recognize that a certain degree of freedom is allowable in proxy solicitation contests for matters which are clearly recognizable as expressions of opinion or judgment. The United States Securities and Exchange Commission has established regulations with respect thereto, and while in the past the defendant corporation has not been subject to them, they provide standards for judgment of the 1965 proxy contest. We find nothing in the materials before us that violates these standards. (cf. T. M. Evans v. Armour & Co., 241 F.Supp. 705,

(E.D.Pa., 1965). This is a matter of statutory and administrative agency regulation, and for the year 1966 and future years the defendant will be governed by the proxy requirements of § 14 of the Securities Exchange Act of 1934, as amended by the Act of 1964 (15 U.S.C.A. § 78n). Therefore, we find no cause of action under Count three of the complaint and no grounds for equitable relief in view of the statutory and administrative control of the problem.

Coming to counts one and two of the complaint, which we believe may be considered together, the plaintiffs attack the legality of the steps taken to effect the changes in the Board of Directors, the legality of the composition of the Board of Directors, and in the alternative claim that even if such actions might be legal if taken for a proper corporate purpose, they are illegal as contrary to the public policy of Pennsylvania when taken for motives of personal interest of defendant directors who allegedly represent a majority of the outstanding shares.

The first argument concerns the manner of adoption of the By-law amendments. These were adopted by the Board of Directors, as they had a right to do under both the Pennsylvania Business Corporation Law, § 304, and under the existing By-laws of the corporation. Although there was no necessity of doing so, and the amendment as stated did not require its submission for shareholder approval, nevertheless the Notice of Annual Meeting listed on its agenda the question of ratification of this Amendment, and the same was ratified by 81% of the shares represented at the meeting.

■ The Resolution of the Directors in fixing the number of Directors to be elected in 1965 did not call for shareholder approval, and under the By-laws as amended, was not subject to such submission. Plaintiffs argue that the terms of the Notice suggested that this Resolution would also be submitted, but the Notice did not specifically state this, and at any event, there was no action taken by anyone at the Annual Meeting to submit the question of the number of directors to be elected to a vote of the shareholders. Plaintiffs had spoken in opposition to the ratification of the By-law amendment, but when this was approved, they participated in the election. Whatever was done was done with majority shareholder approval, and unless clearly contrary to By-law or statutory provisions, must be taken as proper corporate action.

■■ The third argument of plaintiffs is that the corporation was without statutory authority to adopt a By-law providing for a "spectrum" of directors, between six and nine, as determined by action of the Directors prior to the stockholders meeting. Prior to this amendment the corporate By-laws had provided for this "spectrum", with the number of Directors to be elected determined by the shareholders at the annual meeting. The only applicable statutory authority is that provided by § 402 of the Pennsylvania Business Corporation Law which states that "the number, qualifications, terms of office, manner of election, time and place of meeting, compensation, and powers and duties of directors may be prescribed from time to time by the by-laws." There is no mandate that any specific number shall be "fixed", and this is left entirely to the By-laws, which in this corporation may be amended by the Board of Directors. The only other mandate is the requirement that there shall be at least three directors. An academic question may be raised here to the effect that the Directors cannot "determine" the number of directors by a simple Resolution, but must do so by a By-law amendment, which they have the power to adopt. We do not find that the Directors having been given the authority by By-law amendment approved by the shareholders to determine the number to be elected, must then determine the number by the By-law amendment procedure.

We now come to Plaintiffs most persuasive argument; granting that a staggered board of directors is permissible, as provided by § 403 of the Pennsylvania Business Corporation Law, the constitu-

tionality of which was upheld in Janney v. Philadelphia Transportation Co., 387 Pa. 282, 128 A.2d 76 (1956) in face of a claim that it impaired the constitutional right of cumulative voting, does a board consisting of classes of less than three impair the constitutional right of cumulative voting. The plaintiff has argued this point strenuously, stating that the constitutional provision that "a shareholder may * * * distribute (his votes) upon two or more candidates" implies that at least three directors must be elected in one class, since a shareholder would not otherwise cast his vote for more than two candidates unless there were more than two vacancies to be filled. Plaintiff has also called upon the requirement that under § 401 a corporation must have a board of at least three directors. This argument has attracted the attention of courts and commentators. In the lower court decision in Janney (cit. supra), Judge Oliver of the Philadelphia Common Pleas Court, stated in passing:

"The use of the words in Section 4, Article XVI of our Constitution, 'two or more candidates' clearly implies that at least three directors must be elected annually."

This finding was not necessary to his decision in that case, and the Supreme Court, on appeal, and again in language not essential to the findings in the case, essentially denied this implication. Similarly in Hepps v. A. M. Byers Co., No. 10 April Term, 1950, Common Pleas Court of Allegheny County, Pennsylvania, where a former nine member board was changed by a by-law provision into three annual classes of three directors, Judge Adams said:

"Perhaps there are cases where this power of a share may be reduced to such an extent that a court should say the right of voting shares cumulatively has been infringed. But, on the other hand, no by-law would be declared unconstitutional because it failed to give the maximum possible electing power to a share * * * The Constitution did not define the degree of power

which a share was to have. That was left to the legislature."

A note in 56 Dickinson Law Review 330; "Classification of Directors And Its Effect on Cumulative Voting" (1952), with reference to § 401 of the Pennsylvania Business Corporation Law, states:

"I interpret this section as meaning there must be three directors serving at the same time for the same term."

■ Neither counsel nor the Court have found any precedent on this matter in the reported cases throughout the country. It seems obvious that the division of directors into classes so that only one may be elected each year would violate any constitutional or statutory guarantee of the right of cumulative voting. In Bohannon v. Corporation Commissioner, 82 Ariz. 299, 313 P.2d 379 (1957), the Corporation Commissioner of Arizona refused to file articles of incorporation which provided for a nine man board divided into three annual classes of three each. He based his action on the decision of the Illinois Supreme Court in the widely publicized case of Wolfson v. Avery, 6 Ill.2d 78, 126 N.E.2d 701 (1955), which held that a classified board of directors violated the Illinois constitution providing for cumulative voting. However, the Supreme Court of Arizona held that while providing for cumulative voting, the Arizona constitution did not give a right of proportional representation to shareholders. The court found that there was no rule in the constitutional provision that a minority must have some representation proportionate to its strength. However, the Court did find one limit to the power of a corporation to classify its board:

"Any scheme, plan or device which completely denies the effectiveness of cumulative voting must necessarily fall. * * * namely, where a corporation has three directors elected one each year for a three-year term. Unquestionably, such a plan is illegal and void as coming within the implied prohibition of the Constitution in that it absolutely

denies the mandatory right guaranteed to cumulate votes; but merely because it is possible to circumvent the Constitution by one method of staggering directors does not mean that all schemes or plans to that end are within the implied prohibition."

In one case, Humphreys v. Winous Co., 165 Ohio St. 45, 133 N.E.2d 780, 786 (1956), the Court was faced with two Ohio statutes, one allowing cumulative voting and one allowing a classified board. The Court held, in the case in question, that a classified board in which only one director was elected at a time was not a violation of the then existing statutory right of cumulative voting, particularly in view of the fact that this interpretation was recognized to exist by the legislature in its hearings on amendatory legislation which made the practice thereafter illegal.

In State ex rel. Syphers v. McCune, 143 W.Va. 315, 101 S.E.2d 834 (1957), a classified board of two, two and one director for two year terms each was provided. In addition, two of the directors posts were not submitted for election, these being held for terms of fifteen and ten years respectively by two individuals under contracts previously made with the corporation. The Court found:

(101 S.E.2d p. 838). "So during the periods provided in the contracts of McCune and Carnes with the corporation, there could be only three other directorate positions to be filled, and not more than two of them at the same time. Regardless of the motives or purposes of the management of the corporation, or whether such by-law provisions have proved beneficial, it is readily observable that such limitation gives a majority of the stockholders the power to elect all directors of the corporation with no power in a lesser percentage of the votes to elect a single director, and thus deprives entirely the minority of representation on the board and a voice in the management of the affairs of the company."

The Court concluded that under West Virginia statutes, the shareholders had a right to vote for all directors, and that they could not be limited to any lesser number.

In Wolfson v. Avery, cit. supra, the Illinois Supreme Court held a classified board as being in violation of the cumulative voting clause of the Illinois Constitution. However, as the Pennsylvania Supreme Court pointed out in Janney (supra), the Illinois decision was based on a Constitutional mandate which stated that a shareholder shall have one vote multiplied by the *number of directors* of the corporation, while the Pennsylvania Statute (§ 505) on cumulative voting states:

"every shareholder entitled to vote shall have the right * * * to multiply the number of votes to which he may be entitled by the total number of directors to be elected in the same election * * *"

§ 403 provides that in electing a classified board, the classes shall be elected by separate elections.

Janney v. Philadelphia Transportation Company (supra) was concerned with a corporation, where a previously unclassified board was divided into two classes of eight each. That classification was attacked on the grounds that it infringed upon the cumulative voting power of the stockholders as guaranteed by the Constitution; the Court upheld the classification statute. With respect to the diminution of the constitutional right of cumulative voting the court said: (387 Pa. p. 288, 128 A.2d p. 79)

"It is true, of course, that classification may reduce the voting power of minorities by making it more difficult for them in some cases to secure representation proportional to their holdings; thus a comparatively small minority of the voting stock might be able to elect a director if a large number of directors were to be elected whereas a much greater interest might be required to elect a director where only a segment of the board was to be elected. While

it might well be argued that this does not involve any serious injustice or undesirable result in that only a substantial minority should perhaps be entitled to representation, it must be remembered that courts have nothing to do with economic and social considerations of the advantages or disadvantages of the stagger system,—a subject as to which there is considerable variety of opinion among those competent to discuss it and one that is exclusively for the legislature. As far as the Constitutional provision is concerned, it is absolutely clear and unambiguous in what it provides and what it does not provide. It grants the right of cumulative voting but it does not purport to insure the maximum effectiveness of the exercise of that right to obtain minority representation on the board of directors. * * All that the Constitution provides is that each stockholder should have the right to concentrate his votes on one or more candidates to be chosen in any given election; that right is undisputed, but as to how many candidates there shall be at the election, whether they must consist of all the directors of the corporation, whether they cannot be classified and their elections staggered,—as to these and many other factors which necessarily enter into each situation the Constitution is wholly silent; to write into it any such limiting or qualifying provisions as contended for by plaintiff would be an extreme exercise of judicial legislation."

Plaintiffs have further asserted the claim that because the constitutional and statutory construction requires that there be a class of at least three directors, the action of the directors in determining a class of less than three was without legal effect, and that their candidate having received the third largest number of votes is automatically elected. If the right is so clear, plaintiffs' remedy is not in this action, but in an action of Mandamus in the Courts of Pennsylvania. However, we find this argument specious,

since all shareholders understood that two candidates were to be elected, and exercised their voting privileges accordingly. If there is any vacancy on the Board of Directors, it should be filled as provided in the By-laws.

■■■■ There is perhaps a basic misunderstanding in the position taken by plaintiffs. They garnered sufficient proxies to enable them to elect one out of a Board of seven directors, and this possibility was lost by the decrease of the number of directors. But, plaintiffs never had any right to elect any specific number of directors, or to have any specific representation. All rights which they possessed derived from their ownership of shares. It is to the shares that the rights belong, (see Maddock v. Vorclone Corp., 17 Del.Ch. 39, 147 A. 255, (1929)), and the rights of these shares are spelled out by statute; to cast as many votes as there are candidates to be elected, either all for one candidate, for two candidates, or as many candidates as the holder may desire. No individual or group, by the ownership of any given number of shares, acquires any more rights than these, and the only protection given by the Pennsylvania Constitution or statutes is that no plan be adopted which completely denies effect to the right of cumulative voting. Janney v. Philadelphia Transportation Co., (supra). A class of two members does not do this since a minority of a third of the shareholders, plus one, may still elect one of the two directors.

Plaintiffs finally claim that they have a right of action and are entitled to relief because of the circumstances under which these corporate acts were done. In summary they say:

" * * * when a Board is classified into groups less than three, and this is done by the directors and a majority group of shareholders with interrelated interests for the specific purpose and effect of excluding any and all minority representation, then even if such classification is not per se illegal, a court has a right to look to the purpose for which it is

done to insure that the Pennsylvania policy of minority representation is not circumvented to the detriment of minority shareholders."

This invites the Court to adopt a "Gestalt" approach; that is, although none of the constituent parts of this configuration in itself supports a cause of action, the whole configuration results in a purposeful deprivation of the rights of the minority to representation.

But even with a Board composed of directors elected by classes of two, the minority is not excluded of all right of representation. It means only that such a right is only effective when that minority has the support of 33½% plus one of the outstanding shares. Neither the constitution nor the statute in Pennsylvania has defined the right more broadly than this.

▮▮▮▮ Plaintiffs have stressed the "motive" with which said acts were done as giving support to a cause of action against acts otherwise legal. Plaintiffs use "motive" in the broad sense of "purpose" and allege a course of action the purpose of which is to exclude plaintiffs from representation. We have throughout this opinion taken this purpose as established by the allegations, yet we find no support for plaintiffs' claims. The cases all indicate that the purpose or motives are immaterial. See Janney v. Philadelphia Transportation Co., (supra); Hepps v. A. M. Byers Co., (supra); Humphreys v. Winous Co., (supra). Even where a director's motive is suspect, the approval of his action by a majority of the shareholders removes this possible objection. Smith v. Brown-Borhek Co., 414 Pa. 325, 200 A.2d 398 (1964).

Those cases cited by plaintiffs where courts have intervened to protect minority stockholders have involved actual invasion of property rights, such as the attempt of a majority to dissolve a solvent and going corporation, Weisbecker v. Hosiery Patents, Inc., 356 Pa. 244, 51 A. 2d 811 (1947), or action in violation of a court decree, Baran v. Baran, 166 Pa.

Super. 532, 72 A.2d 623 (1950), or the invalidation of irrevocable proxies obtained without consideration, Dickenson v. C. F. Heller Binder, 45 Pa.D. & C. 394. Also the courts have intervened when the procedures required by statutes or by-laws for proper corporate action were not followed; Bagley v. Reno Oil Co., 201 Pa. 78, 50 A. 760, 56 L.R.A. 184 (1902); Moosic Lakes Club v. Gorski, 402 Pa. 640, 168 A.2d 343 (1961).

This is a field peculiarly within the field of legislative and administrative regulation. Corporations are created by legislative action and are controlled in a wide variety of ways by detailed corporation codes. State laws also regulate the sale of their shares to the public, and when a corporation is of sufficient size, as is this one, it is subject to the extensive control of the Federal Securities Exchange Act and the administrative regulation of that Commission. For this reason we believe the "Gestalt" approach is inapplicable to the situation before us.

The plaintiffs have of their own free will chosen to join the fortunes of this particular corporate expedition. They are not captive passengers, they can disembark at any time. They anticipated that they might in time garner enough support to secure election of their candidate to the Board of Directors. Nevertheless, they are charged with the knowledge that the By-laws might be amended to make that prospect more difficult. That result has come about, but they have not been deprived of any legal right. Their positions are the same as those of any stockholder in the corporation and they are entitled only to the same legal protection as any other stockholder. Some of the grievances which they have expressed will be satisfied in the 1966 Annual Meeting when the corporation will be subject to the proxy control of the Securities and Exchange Commission regulations. Any further control of such a situation rests in the hands of legislative and administrative regulatory bodies.

Defendants' Motion for Summary Judgment is granted; plaintiffs' Motion is denied.