**Bernard P. McDONOUGH and Alma McDonough, his wife, Plaintiffs,**

**v.**

**COPELAND REFRIGERATION CORPORATION, a Michigan corporation, Defendant.**

**Civ. A. No. 29499.**

United States District Court
E. D. Michigan, S. D.

Nov. 22, 1967.

Frank W. Donovan, Daniel N. King, McClintock, Fulton, Donovan & Waterman, Detroit, Mich., for plaintiffs.

Robert E. McKean, Richard C. Van Dusen, W. Gerald Warren, Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT

LEVIN, District Judge.

The plaintiffs in this action are minority stockholders of the defendant, Copeland Refrigeration Corporation, a corporation organized and existing under the laws of the State of Michigan.

On December 21, 1966 notice of the annual meeting scheduled for January 31, 1967 was sent to the stockholders with an accompanying form of proxy. One item of business on the agenda for this shareholders' meeting was a proposed bylaw amendment which would substitute a classified board with three classes of three members each for the existing nine-man board elected annually. The notice of the annual meeting and the management proxy statement informed the stockholders that if the amendment were approved, they would then elect three board members for a term of one year, three for two-year terms, and three for three-year terms. At all subsequent annual elections, three directors would be elected for three-year terms.

Plaintiffs commenced this action on January 20, eleven days prior to the scheduled meeting. They sought a restraining order and injunction, enjoining the holding of the annual meeting and the further solicitation or reception of proxies until this court determined the applicability of Section 13(3) of the Michigan General Corporation Act, Mich. Comp. Laws § 450.13(3) (1948). The section of the act referred to provides that:

" * * * the number of directors of any corporation shall not be reduced in case the votes of a sufficient number of shares are recorded against such proposed reduction, which, if cumulatively voted, would elect 1 or more directors, where the same number of shares if voted cumulatively would not be sufficient to elect the same number of directors of the board so reduced." Mich. Comp. Laws § 450.13(3) (1948).

The proposed amendment, plaintiffs maintained, amounted to a reduction of the number of directors within the meaning of this statute, in that it would reduce to three the number of directors to be elected at any future annual meeting and thus dilute the voting strength which the minority had possessed by cumulating its votes in an election of the full board of nine directors.

Plaintiffs therefore sought a declaration that the stockholders could defeat the amendment in the event the shares voted against it, if cumulatively voted, would be sufficient to elect one director to a nine-man board and that the management proxy statement was invalid in failing to inform the stockholders of that fact.

During the hearing on the order to show cause held on January 26, the plaintiffs advised the court that they wished to withdraw all pending requests for temporary injunctive relief. After a full discussion and with the consent of all parties, the court ordered that the meeting and vote scheduled for January 31 might be held as planned. The order further provided that if the amendment passed by a majority, but enough votes were recorded against its adoption to defeat it under plaintiffs' theory of the law of cumulative voting, then the court would later determine whether its adoption had been valid and, if it found for the plaintiffs, the terms of all nine directors elected at the meeting would be deemed to be for one-year terms.

The annual stockholders' meeting was held on January 31 and February 1 and the amendment was adopted on the affirmative vote of the holders of 690,738 shares. The Inspector of Election recorded only 50,801 votes in opposition, refusing to validate proxies representing 73,137 additional votes against the proposal.

Defendant's renewed motion for summary judgment, filed after the annual meeting, is based in part upon failure of the minority to assemble at least 81,469 shares of the 814,676 shares voting, the number necessary to defeat the proposal even under plaintiffs' theory. Plaintiffs reply that the proxies were improperly excluded from the count. It is

not necessary to resolve this issue or the question of the validity of the management proxy statement since the court is of the view that Section 13(3) of the General Corporation Act, relied upon by plaintiffs, is inapplicable.

Under a literal reading of this statutory section, "the number of directors" has certainly not been reduced. The number of directors was nine under the old bylaw and is still nine under the amended bylaw. But plaintiffs say that "to give this section a reasonable construction, consistent with the clear legislative intent repeatedly expressed since 1885, requires the Court to hold that a reduction of the number of Copeland directors to be elected annually from nine to three by a change to a classified board is a reduction in the number of directors as the term was intended to mean in Section 13(3) * * *". They argue it would be unreasonable to assume the legislature meant to allow a simple majority to dilute the cumulative voting power of the minority by classifying the board. This would be inconsistent, by their reasoning, with the legislative protection of the minority whereby a minority can elect a director, can block the removal of a director, and can even block a reduction in the size of the board. Mich. Comp. Laws §§ 450.13(3), 450.32 (1948).

■■ The dilution of the cumulative voting power of the plaintiffs by the adoption of a classified board is apparent. But there is no mandate that requires the legislature to treat in the same way various measures which may have the effect of weakening cumulative voting power of the minority. The legislature may have seen more virtue in the classified board of directors, which helps assure a continuity of experienced leadership, than in a mere reduction in the size of the board or even in the removal of a director. There is no logic which compels a court to find that the creation of a right to cumulate votes implies the fullest possible protection against dilution of minority power.

In Stockholders Committee for Better Management of Erie Technological Prod-

ucts, Inc. v. Erie Technological Products, Inc., 248 F.Supp. 380 (W.D.Pa.1965), the court quoted with approval from Janney v. Philadelphia Transportation Co., 387 Pa. 282, 128 A.2d 76 (1956), interpreting the cumulative voting provision of the Pennsylvania constitution:

"It grants the right of cumulative voting but it does not purport to insure the maximum effectiveness of the exercise of that right to obtain minority representation on the board of directors." 248 F.Supp. at 388.

The Supreme Court of Ohio construed the Ohio cumulative voting statute in Humphrys v. Winous Co., 165 Ohio St. 45, 133 N.E.2d 780 (1956), as follows:

"We hold, therefore, that Section 1701.58, Revised Code, guarantees to minority shareholders only the right of cumulative voting and does not necessarily guarantee the effectiveness of the exercise of that right to elect minority representation on the board of directors." 165 Ohio St. at 59, 133 N.E.2d at 789.

Michigan has been more zealous than Pennsylvania, Ohio and many other states in its protection of cumulative voting power. But it has not extended such protection to the fact situation here. No legislative history has been presented nor can the court find any to support the position of the plaintiffs.

A cumulative voting provision appeared in the statutes for the first time in 1885. Public Acts 1885, No. 112, as amended, Mich.Comp.Laws § 450.651 (1948). The Michigan Legislature, through successive changes in the sections of the Michigan General Corporation Act relied upon by the plaintiffs, has decided not to protect minority shareholders against the dilution of their strength in the election of directors by means of a bylaw amendment creating staggered directors' terms. Public Acts 1921, No. 84, § 8; Public Acts 1929, No. 267; Public Acts 1931, No. 327, § 32; Public Acts 1937, No. 350; Public Acts 1943, No. 160.

Statutory authority for classification of directors and staggered terms first

appeared in the General Corporation Act of 1931. Public Acts 1931, No. 327, § 13(4), as amended, Mich.Comp.Laws § 450.13(4) (1948). It is clear that the legislature recognized then that classification could change the effect of cumulative voting, for it amended the section on the vote necessary to remove a director, providing:

> " * * * that the shareholders shall have the right to vote cumulatively on such removal and no director shall be removed against whose removal sufficient votes shall be recorded to have elected a director on the election of a full board *or a division thereof,* if the board should be classified: And, provided further, That any cumulative shares so voted against the removal of any director shall not be voted against the removal of any other director during the term of which the board *or a division thereof,* as the case may be, shall have been elected * * * " Public Acts 1931, No. 327, § 13(3), Mich. Comp. Laws § 450.13(3) (1948).

The history and analysis of the present statutes also show that the legislature was thoroughly familiar with a provision that could protect cumulative voting power against dilution by giving a veto power to the holders of sufficient shares to elect a director. Such a provision appears twice in the General Corporation Act, protecting the minority against the removal of a director and against reduction in the size of the board without their approval. Mich.Comp.Laws § 450.13(3) (1948). And it may be noted that the legislature used a similar provision when they made cumulative voting permissive rather than mandatory in 1929. In that enactment it provided that a minority of sufficient strength could block the adoption of a bylaw eliminating cumulative voting. Public Acts 1929, No. 267, § 8.

The fact that the legislature did not specifically deal with the problem at issue here seems especially significant in view of this history. The legislature was apparently aware of the effect of staggered terms upon the voting power of the minority and of language which could be in-

serted in the statute to protect the minority against the institution of a classified board against their will.

To interpret the statute as plaintiffs urge would distort the respective powers of the majority and minority contrary to the clear language and intent of the relevant provisions of the statute.

Therefore,

It is ordered that the defendant's motion for summary judgment is hereby granted.