# The Albert M. Greenfield Foundation v. Bankers Securities Corporation

*Aaron M. Fine*, for plaintiff.
*Theodore W. Flowers* and *Robert K. Greenfield*, for defendants.

MARSHALL, *J.*, March 28, 1978—The motions before this court in this complex proceeding in equity are motions for discovery filed by counsel for plaintiff and defendants, both of which seek, inter alia, further answers to questions propounded in depositions and interrogatories, rulings on the validity of earlier interposed objections to those questions, and attorneys fees incurred in obtaining these orders. The merits of the pending motions will be discussed in the order in which they were filed.

## PLAINTIFF'S MOTION
## (FILED MARCH 25, 1977)

By order of this court dated January 7, 1977, defendants' motion for a protective order barring the depositions of defendants Bruce H. Greenfield and Gustave G. Amsterdam was denied. Pursuant to that order, depositions were taken by plaintiff's counsel on February 14 and 17, 1977, respectively. At each of these depositions, defendants' counsel instructed Greenfield and Amsterdam not to answer questions pertaining to: (a) their perception of any conflict between their positions as trustees of the Greenfield Foundation (hereinafter Foundation) and directors of Bankers Securities Corp. (hereinafter BSC), (b) their purpose, through the BSC by-law amendment, to prevent the Foundation from electing its candidates as directors of BSC, (c) their communications with Peat, Marwick, and (d) their discussions with each other after this suit was started.

· · ·

A. *Deposition Questions Concerning The Defendants' Objectives and Motions In Amending the By-Laws Governing The Election of Directors to the Board of Bankers Securities Corporation*

At a meeting of the board of directors of BSC held on May 27, 1975, the corporate by-laws were amended to provide for staggered elections of BSC directors. At the February 14 and 17 depositions of Greenfield and Amsterdam, defendants' counsel instructed defendants not to answer plaintiff's counsel's questions pertaining to their motives in adopting the by-law amendment, claiming that the

directors' motives were irrelevant to plaintiff's case. In support of that position, defendants' counsel cited Stockholders Committee for Better Management of Erie Technological Products, Inc. v. Erie Technological Products, Inc., 248 F. Supp. 380 (W.D. Pa. 1965), which held that when directors and majority shareholders amend the corporate by-laws in such fashion as to diminish the cumulative voting power of the stock, such action, if permitted by law, does not amount to a breach of fiduciary duty toward the minority shareholders, even where the directors' purpose or motive in taking such action is to exclude the minority shareholders from board representation. Id. at 384, 389. On its face, the holding in Erie Technological Products does not appear to be controlling, for here the by-law amendment was adopted not by mere directors, but by directors who also happen to be trustees of the Foundation, the single largest shareholder of BSC. By the same token, while the Foundation, qua shareholder, cannot inquire into the motives of the corporate directors, it can, as the beneficiary of separate and distinct fiduciary obligations, demand that its trustees—even those who happen to be corporate directors,—do not breach those obligations. In this suit by the Foundation, charging its trustees with breach of fiduciary duty, the motives of the directors (again, as trustees) become highly relevant. See Tankersley v. Albright, 514 F. 2d 956 (7th Cir. 1975). Therefore, this objection by defendants to questions concerning motives and objectives in the amending of the by-laws governing election of directors of BSC is overruled and defendants are hereby directed to answer such questions.

## B. *Deposition Questions and Interrogatories Concerning Defendants' Discussions With Their Accountants, Peat, Marwick & Mitchell*

Plaintiff has alleged that defendants, Greenfield and Amsterdam, breached their fiduciary duties as trustees of Foundation's voting trust by voting 48,690 shares of non-voting BSC treasury stock in favor of management's nominees for the BSC board of directors. This allegation stemmed, in part, from the 1974-1975 annual report prepared for BSC by its accountants, Peat, Marwick & Mitchell, wherein those shares were listed under the designation "Treasury Stock." Initially, defendants took the position that the treasury stock label was irrelevant to plaintiff's cause of action. However, when plaintiff moved for summary judgment, defendants took the position that the disputed shares were not actually treasury shares but were so designated in the annual report simply by an accountant's definition. Interestingly, in the BSC annual report released the following year (1975-1976), the treasury stock designation did not appear. By way of interrogatories, plaintiff's counsel asked defendants to reveal "the circumstances under which such shares with respect to each subsidiary [of BSC], became part of the voting trust." (Interrogatory 1(h)). Defendants answered with respect to each subsidiary: "Upon reclassification of capital stock." At the subsequent depositions of defendants, Greenfield and Amsterdam, defendants' counsel instructed his clients not to answer any questions relating to the troublesome "Treasury Stock" designation, basing his objection upon the Pennsylvania statute affording confidentiality to

certain communications between accountants and their clients: Act of May 26, 1947, P.L. 318, as amended, 63 P.S. §9.11a. In addition, defendants' counsel stated that he intended to raise the same privilege at the deposition of the accountants, should such deposition be taken.

Plaintiff has moved for an order (1) compelling defendants to provide a fuller and more specific answer to interrogatory 1(h); (2) compelling defendants to answer the deposition questions annexed to its motion; and (3) prohibiting defendants from raising the accountant-client privilege at continued depositions as well as at the depositions, if noticed, of their accountants.

Our courts, implementing Pennsylvania's policy in favor of liberal pre-trial discovery, have imposed upon the party resisting discovery the burden of establishing that the requested information is protected from disclosure by a constitutional, statutory or common law privilege. It is, therefore, incumbent upon defendants to demonstrate that the limited accountant-client privilege shields the requested information from disclosure.

The information that plaintiff seeks clearly meets the traditional prerequisites for discoverability contained in Pa.R.C.P. 4007. The contents of discussions had between defendants and their accountants will unquestionably shed some light on plaintiff's contention that defendants voted for their own board nominees with stock to which voting rights do not attach.

Apart from the bare, conclusory statement that the disclosure sought by plaintiff "is clearly barred by the statute,"(defendant's memorandum at 5), defendants have failed to show precisely what language in the statute supports its objection. While

the statute recites the general proscription against the accountant divulging "information of which he may have become possessed relative to and in connection with any professional services," a proviso clause exempts from the statute's protection, inter alia, "information required to be disclosed by the standards of the profession in reporting on the examination of financial statements, or in making disclosures in a court of law . . . " The statute, regrettably, does not indicate what the standards of the accounting profession demand by way of disclosure of otherwise "confidential" information. By implication, its language acknowledges that those standards do mandate the disclosure of (1) information relating to the accountant's report on the examination of financial statements; and (2) information that may be compelled by the court in the course of court proceedings.

Prior to its amendment in 1974, the statute creating an accountant-client privilege contained an exemption clause that withdrew from the statute's protection information acquired by the client as a result of "the examination of audit of or report on any financial statements, books, records or accounts, which he may be engaged to make." The courts construing the former statutory exclusion held that the privilege did not attach to information obtained by the accountant directly from the client's books and records: Marine Midland Trust Co. v. Douvanis, 50 D. & C. 2d 403, 409 (1970); or to explanatory notes and statements made by the accountant relative to financial statements he or she prepared: E. J. McAleer & Co. v. Iceland Prod., Inc., 62 D. & C. 2d 65, 70-71 (1973). While plaintiff's reliance on these cases is weakened by the fact that the former exclusionary clause has been

superseded by another, defendants nevertheless have failed to cite any cases supportive of their contention that the present accountant-client privilege statute bars the disclosure which plaintiff seeks.

Turning to the present statute, it is difficult to imagine that the standards of the accounting profession would not require defendants' accountants to reveal, at deposition, the information which plaintiff seeks herein, information so crucial to the preparation and ultimate disposition of plaintiff's claims. It was defendants' accountants who included the 48,690 shares of stock in the 1974-1975 annual report under the heading treasury stock. If that designation was an accurate description of that stock, then defendants violated Pennsylvania law in voting that stock at the board election. If that designation was, as defendants now claim, an "accounting definition" and a legally inaccurate description, defendants did not violate Pennsylvania law in voting those shares at the board of directors election. In either case, it is inconceivable that professional accounting standards would *not* demand that the accountants explain the circumstances underlying the disputed designation. The accountants included the treasury stock designation in BSC's 1974-1975 annual report, presumably pursuant to an examination of BSC's financial affairs, including its financial statements. Furthermore, given the impact that the resolution of this issue will undoubtedly have on the question of defendants' liability, the standards of the profession cannot and should not impede the court's effort to assure plaintiff the fullest opportunity to prepare its case through the vehicle of discovery. For these

reasons, the court holds that the information which plaintiff seeks is not immunized from discovery by the statutory accountant-client privilege.

Even if the privilege does embrace the disclosures plaintiff seeks to obtain, the other arguments advanced by plaintiff in support of its motion are persuasive. First, under the circumstances herein presented, defendants, by placing in issue the substance of the communications which they now decline to divulge, may be said to have waived the accountant-client privilege which might have otherwise attached. See T.W.A., Inc. v. Hughes, 332 F. 2d 602 (2d Cir. 1964), cert. denied, 380 U.S. 248 (1965). See also Ball Trust, 40 D. & C. 2d 449 (1966).

In addition to the waiver argument, plaintiff relies on cases which have held that privilege may not be asserted by a corporation to preclude a major shareholder seeking to vindicate its rights from inquiring into matters vital to the shareholders' cause of action. See Garner v. Wolfinbarger, 56 F.R.D. 499 (S.D. Ala. 1972), 430 F. 2d 1093 (5th Circuit 1970); Valente v. Pepsico, Inc., 68 F.R.D. 361 (D. Del. 1975).

For any or all of the above-mentioned reasons, plaintiff is entitled to an order compelling defendants to provide fuller and more specific answers to interrogatory 1(h) and overruling defendants' counsel's objection based on the accountant-client privilege, with respect to the deposition questions appearing in the body of plaintiff's motion.

This court will not rule on plaintiff's request in the nature of an advisory opinion with respect to depositions which might be taken of defendants' accountants.

ORDER

And now, March 28, 1978, upon consideration of plaintiff's motion to compel answers to deposition questions, to preclude future objections on similar grounds, to compel further answers to plaintiff's interrogatories, and to award plaintiff attorneys' fees incurred in obtaining this order, defendants' memorandum in opposition thereto, memoranda, briefs, and argument of counsel thereupon, it is hereby ordered and decreed that said motion is granted as hereinafter provided:

1. Defendants Bruce H. Greenfield and Gustave G. Amsterdam shall answer all of the unanswered questions set forth in paragraphs 2(a)-(j) and 3(a)-(i) of plaintiff's motion.

2. Defendants' counsel shall not be permitted to assert the accountant-client privilege at the taking of depositions of his clients, Bruce H. Greenfield and Gustave G. Amsterdam, or in answer to interrogatories addressed to defendants with regard to questions concerning the circumstances surrounding the designation of 43,690 shares of Bankers Securities Co. stock as "Treasury Stock" in the 1974-1975 annual report and the excision of that designation from the annual report for the fiscal year ending January 31, 1976.

3. Defendants shall file within 20 days of the date of this order further answers to plaintiff's interrogatory 1(h).

4. The requests for attorneys fees incurred in the bringing of the instant motion is denied.