## Casani's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Frederick V. Hebard* and *S. Eugene Kuen, Jr.*, for exceptants.

*Harpur M. Tobin* and *David D. Goff*, contra.

STEARNE, J., January 12, 1940.—If a fiduciary receives nonlegal securities as part of the trust estate, within what *time* is he required to convert them?

The Supreme Court has unequivocally answered this question in Seamans' Estate, 333 Pa. 358. In the opinion of Mr. Justice Stern it is written (p. 360):

*"There is no arbitrary or standardized formula which can be used as an inflexible measuring rod. The most that can be said as the result of a study of the authorities is that from them certain principles emerge which, in a broad sense, are applicable to this class of cases."* (Italics supplied.) On page 363 there appears a statement of such principles:

"As definitely as general rules may safely be formulated,—there being, as already pointed out, no rigid criterion,—the law may be thus stated:

"1. If a fiduciary receives nonlegal securities as part of the trust estate, he is vested by law with a measure of discretion and allowed to some extent to exercise his own judgment as to the wisdom of selling the securities under prevailing market conditions. However, in the absence of exceptional circumstances, he should convert them promptly. This does not require that he sell them *immediately*, as 'under the whip of the law,' but it means that he should not continue to hold them indefinitely merely because he believes that they will appreciate in value and

would therefore retain them if they were his own securities.

"2. Under certain circumstances a fiduciary is excused from the prompt sale of nonlegal securities which is otherwise required. Such circumstances cannot be completely catalogued; they must be considered in each case as they arise. Among them may be mentioned instances where the market is so restricted that it is reasonably impossible to sell the security; or where the offering of a large block of stock at one time would drastically break the market price; or where a security is abnormally depressed in value because of a general economic and financial collapse, so that a sale can be effected only at a sacrifice, but there is a reasonable likelihood of an early return to stable conditions which will restore the normal value. A fiduciary is not compelled to jettison seasoned investments during a temporary panic. Other exceptions to the general rule are where the will or other instrument creating the trust grants powers broad enough to justify the retention of the securities, or where the beneficiaries of the trust themselves request or agree to such retention."

In footnote 2 (p. 363) comment (*b*) of §230 A. L. I. Restatement of Trusts is quoted in full. It reads:

" 'When there is a duty to convert trust property, the conversion must be made within a reasonable time after the creation of the trust. Ordinarily any time within a year is reasonable, but under some circumstances a year may be too long a time and under other circumstances a trustee is not liable although he fails to effect the conversion for more than a year. Thus, if there is a ready market for the property, it would usually be improper to delay the sale for a year. If, however, the property even though it has a ready market could not be sold except at a sacrifice, it may be proper for the trustee to delay the sale for more than a year. The question in each case is whether under all the circumstances the trustee acted with prudence in delaying the sale': Restatement of

Trusts, section 230, comment *b*. See *Hughes v. Empson*, 22 Beav. 181."

In footnote 3 (p. 363) it is written:

"The Fiduciaries Act of 1917, P. L. 447, section 49 (*e*) 2, provided that 'Where stocks, bonds, or other securities have been distributed in kind . . . to any fiduciary, it shall be the duty of such fiduciary to use reasonable diligence in converting such securities as shall not be investments now or hereafter authorized by law.' The Act of May 28, 1937, P. L. 1037, section 3, amending section 41, par. 1, clause *a*, subsection 13, of the Fiduciaries Act (as added by Act of July 2, 1935, P. L. 545) provides that the fiduciary shall not be liable if he 'exercises due care and prudence in the disposition or retention of any such nonlegal investment.' Section 4 eliminates the clause in the Fiduciaries Act requiring the use of reasonable diligence, and provides that if the fiduciary be doubtful as to the propriety of selling the securities he may apply to the orphans' court for authority and direction to retain them. It is unnecessary to consider the effect of this later legislation as it was not retroactive and is therefore not applicable to the present case. It may be pointed out, however, that even this statutory standard of 'due care and prudence' in the retention of nonlegal investments calls for judicial interpretation, and may properly be construed as requiring conformity with the general rules above stated."

In the Seamans case a guardian for the estate of a minor was awarded certain nonlegal securities in kind. Possession was secured on September 2, 1930. The securities were retained until the accounting on July 16, 1937, a period of over seven years. The Supreme Court directed a surcharge based upon values as of September 2, 1931— an allowance of a period of retention of one year.

Exceptants, joined by counsel for Corporate Fiduciaries Association of Philadelphia, amicus curiæ, protest that in the instant case the auditing judge has improperly adopted the decision in Seamans' Estate. It is argued that

the true test concerning retention of nonlegal securities. is "not a mere lack of attention, but the honest exercise of judgment based on actual consideration of existing conditions." Counsel for exceptants in a learned brief, citing authorities over the past 100 years — from Calhoun's Estate, 6 Watts 185 (1837), to Nola's Estate, 333 Pa. 106 (1939) —seeks to demonstrate that prior to Seamans' Estate, supra, the *length of time* of retention was not regarded as material where there existed "the honest exercise of judgment based on actual consideration of existing conditions."

The rule of law enunciated in Seamans' Estate is declared by exceptants to have placed all fiduciaries, who have retained nonlegal securities for over one year, in a most precarious situation. In a word, a protest is made that the effect is as if rules were changed in the progress of a game. It is stated the *sole* concern of fiduciaries (as to retention) *prior* to 1939 had, under decisions of the Supreme Court, been the "exercise of judgment and attention"; that *after* 1939 the rule has been altered by the Seaman case to a duty to convert promptly. It is urged that fiduciaries will be liable to surcharge for uncontemplated violation of duty, which will involve tremendous sums of money. On the other hand, it is just as forcibly argued by counsel for the life tenant that Seamans' Estate lays down no new rule with regard to the retention of nonlegal securities, and the language of the Supreme Court in Taylor's Estate, 277 Pa. 518 (1923), and cases therein mentioned, is cited to support that contention.

This court is requested by counsel for the Fiduciaries Association to declare that the proper test of liability is that enunciated in Brown's Estate, 287 Pa. 499, claimed to be reiterated and affirmed in Nola's Estate, 333 Pa. 106, and not as stated in Seamans' Estate, supra. We are asked to decide whether the old rule of "ordinarily good business judgment or foresight" has been "changed or crystallized" so that now "It is . . . not a question of prudence, but a question of duty": Seamans' Estate. And

furthermore, if there has been a change in the law, whether such rule should be applied retroactively to wills executed prior to 1939.

In our opinion decision upon such matters rests exclusively with the appellate court and not with the orphans' court. This court is bound by the latest unreversed or unmodified decision of the Supreme Court. Seamans' Estate, supra, clearly appears as a binding authority. As the auditing judge adopted Seamans' Estate as the basis for his decision, our single inquiry is to determine whether he has followed the directions of the Supreme Court. A careful review of the record convinces us that he has.

The accountants are testamentary trustees. Nonlegal securities were received in kind by them on October 22, 1931. The securities are still retained (1939). They have depreciated in value. The life tenant and guardian and trustee ad litem seek to surcharge the trustees for the loss incurred. The securities consisted of railroad bonds, bank and utility stocks. Apparently all are listed on the exchange and are active. They could have been sold *at a price* at any time during the entire period of retention.

The auditing judge, following and quoting Seamans' Estate, supra, applied the test hereinbefore quoted. He ruled that the fiduciaries should have sold the securities "promptly"; that ordinarily promptness was within one year, but he allowed two years, viz., until October 1933, as a reasonable time within which to convert; that there was an "absence of exceptional circumstances" to condone further retention.

We are not prepared to subscribe, as a matter of judicial knowledge, to the statement that after April of 1933 "it was apparent to all by that time that the depression would be of long duration and the recovery back to normal would be slow and likely to last for some years." This is a matter which might be open to debate. However, the crux of the case is that at least by October 1933, the loss had definitely been established. Under the view of exceptants the trustees could, if vigilant, still further retain the secu-

rities with the wishful hope or expectation of ultimate recovery in value with almost the same impunity as an absolute owner could have done with his own securities. Seamans' Estate, however, definitely rules that the fiduciaries, no matter how dutiful and vigilant, in the absence of exceptional circumstances (and there are none) must *promptly* convert nonlegals. We are unanimously of opinion that the auditing judge, under existing authority, was constrained to rule as he did. We find no error in his findings of fact and conclusions of law, which we affirm.

It is earnestly urged that, irrespective of the rule, the life tenant is estopped from seeking a surcharge, because statements submitted to her by the fiduciaries over the course of the years disclosed: (1) Dividends from the nonlegal securities so retained; (2) allocation of repairs between income and principal; and (3) deduction of six percent interest on the small trust funds (instead of income from separate trust funds directed by the auditing judge to be set up in the first adjudication).

We are in entire accord with the auditing judge that this alone is insufficient proof that the life tenant was fully informed of the facts and was cognizant of her legal rights. In these circumstances alone we agree that the auditing judge "cannot infer from her mere silence that she was cognizant of her legal rights".

" 'Estoppel by silence' arises where a person who by force of circumstances is under a duty to another to speak refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice:" 21 C. J. §10 p. 1061.

We see nothing in this record which indicates that there was any duty imposed upon the life tenant to speak prior to the audit of the trustee's account, or that her failure to so do in any manner prejudiced the fiduciaries.

Objection is made by counsel for exceptant and the Fiduciaries Association to a statement of the learned auditing judge which he conceives to be the rule covering

the application of the doctrine of estoppel, acquiescence or laches, as between a trustee and cestui que trust. Since we have agreed with the result arrived at, for the reason as above set forth, we see no reason to discuss the suggested rule, except to say the establishment of an estoppel is a mixed question of fact and law, and each case must depend largely upon its own circumstances. The application of the doctrine of estoppel, laches or acquiescence is so intricately bound up with the facts of each case that a general rule cannot be formulated with any degree of safety.

Exceptions 11 to 14 question the propriety of and method of calculation of a surcharge of $1,777.27 found to be the amount of diminution of the life tenant's income suffered by reason of the trustee's failure to set up three specific trust funds of $5,000 each as directed by the will and adjudication of October 7, 1931, confirmed absolutely October 22, 1931. It appears that instead of converting what was necessary to set up these trusts or even setting aside therefor certain of the unconverted investments, the accountants on November 30, 1931, paid into each trust on account $700. Thereafter from time to time partial payments were made to each trust. At the time of the audit there still remained unpaid $200 on the principal of each trust. During the periods in which the respective trusts were short in principal the trustees adopted the expedient of paying out of the income of the entire trust estate which they held for the life tenant six percent on the unpaid balances due the three $5,000 trusts.

The life tenant complained that as the whole of her trust estate did not earn six percent she suffered a diminution of income which she would otherwise have received. The auditing judge held that she should be reimbursed for her loss, to be determined by taking the value of the principal of the residue as of the time these three trusts should have been set up, viz., November 2, 1931, and comparing this sum with the whole income earned to deter-

190

mine the residue's rate of earning. So far as this did not equal six percent the life tenant was hurt. With this we agree.

However, it appears that no evidence was offered at the audit to show the value of the principal of residue as of the date when the trust funds should have been set up, which date the auditing judge found to be November 2, 1931. He therefore took as the value that at which the securities were accounted for and awarded to the accountants by the adjudication of October 7, 1931. Prima facie in absence of a reappraisement that value would have been proper, but for an offer of proof made by the trustees and accepted in lieu of testimony which offered to show, inter alia, in a general way that the·principal or residue was actually less than the prima facie value, so much so that the actual income amounted to more than six percent per year on this value.

The form of the offer of proof is clearly open to criticism. Offers made and accepted in lieu of testimony must contain specific facts and not generalities.

It may be that the technical rules of evidence might warrant a finding that the prima facie value of the residue was not sufficiently rebutted by the offer couched in general terms, but we think, and the auditing judge agrees with us, that justice would be better served if the accountants were afforded an opportunity to prove the actual value of residue as of the date the auditing judge found they should have been set up, viz., November 2, 1931.

Counsel for exceptant further points out that in calculating the total income earned by the residue, certain charges made against income but directed by the auditing judge to be charged against principal and certain other surcharges were not included. As these operate to increase the income they should be added thereto in order to correctly compute the rate. With this the learned auditing judge also agrees.

Exceptions 12, 13, and 14 are sustained pro forma, and, the auditing judge consenting, recommitted to him for the purpose of receiving evidence to establish the actual value of the residue and recalculation of the amount of surcharge, if any.

We need not discuss the exceptions filed to the adjudication concerning other matters of administration. The findings of fact and conclusions of law of the auditing judge were obviously correct and merit no further consideration.

All exceptions, except those herein sustained pro forma, are dismissed and the adjudication, as modified, is confirmed absolutely.