166 Pa. Superior Ct. 532 (1950)
Baran et al.
v.
Baran et al., Appellants.
Superior Court of Pennsylvania.
Argued March 6, 1950.
April 11, 1950.
*533 Before RHODES, P.J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.
John E. Cotsack, for appellants.
Henry Thalenfeld, for appellees.
*534 OPINION BY RENO, J., April 11, 1950:
Plaintiffs, minority stockholders of Luzerne and Carbon County Motor Transit Company, Inc., sought and secured a preliminary injunction against the corporation and the majority stockholders restraining them from committing certain illegal acts. Before testimony was taken the parties settled their differences by a written agreement which, in accordance with one of its terms, became the basis of a consent decree entered by the chancellor on March 1, 1948. Subsequently, alleging that defendants had violated the consent decree on October 15, 1948, plaintiffs secured a rule to show cause why an attachment for contempt should not issue. After a hearing before the same chancellor, Judge FLANNERY, the rule was made absolute and, his decree having been approved by the court en banc, defendants appealed.
The equity suit was the culmination of serious controversies and law suits between two brothers, Wasil and Michael Baran, who together own 98% of the stock, Michael holding 630 and Wasil 345 shares.[1] The agreement of settlement provided, inter alia, that Michael as president-treasurer and general manager should be paid $2400 annually "for expenses incurred by him in the retention of the present existing business of the corporation; and there shall also be paid unto him, as and when incurred, such other expenses as may be advanced by him in the stimulation and procurement of such special patronage as group, party and school bus service, and he shall be reimbursed a reasonable sum for the use of his private conveyance in the business of the company; and this shall be in addition to reasonable compensation for services (not exceeding Two Hundred ($200.00) Dollars *535 per month) which he may render unto the said corporation as a mechanic, carpenter and artisan in various lines not generally within the purview of the duties of President-Treasurer or General Manager."[2]
By the terms of the agreement Wasil was to be vice president, and was to be paid "a sum equivalent to one-half (½) of the salaries paid unto Michael Baran, as President-Treasurer and General Manager of the said corporation, including all bonuses, special payments and items of a cognate character paid unto the said Michael Baran, excluding, however, the expense moneys of Twenty-four Hundred ($2400.00) Dollars per annum hereinbefore referred to and excluding payments for services rendered as mechanic, carpenter or artisan upon behalf of the corporation and reimbursement for use of his private car and travel expenses."
The chancellor found that the purpose of the settlement agreement and the consent decree founded thereon was to compose the differences between the brothers and to reward them in proportion to their stock holdings. The spirit and letter of the agreement was violated, the chancellor held, when Michael, with the approval of the board of directors, employed his wife as a clerk at $200 per month. Concerning the employment the chancellor found: "The duties of Mrs. Anna Baran are vague. The telephone was so connected that it rang in the office and in the home situated close by. She was to answer the phone in the home after office hours if her husband was not present. She was to take messages, etc. With this we have no quarrel but she had been doing this since 1937, as part of her domestic routine without any thought of compensation from the corporation. It is a duty commonly discharged by wives generally.
*536 "It may be of interest to note that beginning in 1946 and through 1947 she appears as a director and was receiving $100.00 per month as such. But this was discontinued after the consent decree and so the construction which the parties themselves placed upon their agreement indicates that she was to be dropped from the payroll. To reinstate her now at twice that salary without specific duties, hours of employment or responsibilities looks like an attempt to accomplish by indirection that which they agreed not to do."
The learned chancellor "decreed that the employment of Mrs. Anna Baran be terminated and the payments made to her be repaid to the corporation or debited against the account of her husband, Michael Baran. Or the parties, by agreement, may arrange to pay to Wasil Baran, complainant, an amount equal to one-half the total paid to Michael Baran and/or Anna Baran by virtue of the employment of Anna Baran. The result thus to be accomplished is to enforce the letter and the spirit of the consent decree that the parties may be bound by their solemn agreement, as incorporated in that order of this Court."
We are bound by the chancellor's findings of fact, since they have been approved by the court en banc, and are completely and abundantly sustained by the evidence. The corporation and the board, dominated by Michael, by the specious device of employing Mrs. Baran sought, to quote the chancellor's opinion, "to divert an additional $200.00 per month to Michael Baran and was, therefore, in violation of the agreement implemented by the consent decree." A court of equity cannot permit a voluntary compact, to which it has added its judicial sanction, to be patently evaded by such a shabby device.
Apart from the agreement and the decree, the holders of the majority stock and the board rested under the distinct legal obligation to exercise good faith, care and *537 diligence to protect the interests of the minority. 13 Am. Jur., Corporations, § 423. Although they had power to control and manage the business affairs of the corporation they could not allow one of their number to raid its treasury for his personal benefit or for the unjust enrichment of his family.
It is of no moment that the consent decree was entered without a hearing. The court had jurisdiction of the suit; defendants had been properly served with its process, and actually appeared before the chancellor. If, without taking testimony, the parties chose to settle the litigation by a consent decree the chancellor was not bound to file an adjudication according to the form prescribed by Equity Rule 67. The consent decree derived its efficacy from the agreement of the parties and the approval of the chancellor. It bound the parties with the same force and effect as if a final decree had been rendered after a full hearing upon the merits. A decree entered by consent of the parties is so conclusive that it will be reviewed only on a showing that an objecting party's consent was obtained by fraud or that it was based upon a mutual mistake. 19 Am. Jur., Equity, § 407.
The proceeding was instituted for injunctive relief; the duty imposed by the consent decree was of a continuing nature; and hence the power of the court to enforce the decree by an attachment cannot be gainsaid. Ladner v. Siegel, 298 Pa. 487, 148 A. 699.
The corporation is a party defendant but manifestly it should not be compelled to pay costs which have been incurred through Michael's overreaching and his control of its affairs. Our order will require him to pay the costs out of his own pocket and he will not charge them to the corporation as expenses or otherwise.
Decree affirmed. Michael Baran shall individually pay all costs without recourse to the corporation.
NOTES
[1] Since the decision in McCay v. Luzerne and Carbon County Motor Transit Company, Inc., 125 Pa. Superior Ct. 217, 189 A. 772, the control of the corporation has been in the Baran Brothers.
[2] This allowance of expenses is in addition to Michael's salary of $12,000 per annum.