Zampetti *v.* Cavanaugh, Appellant.

Argued October 4, 1961. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Thomas D. McBride,* with him *Victor Wright,* and *McBride, von Moschzisker & Bradley,* for appellants.

*Charles A. Lord,* with him *David F. Binder,* and *Richter, Levy, Lord, Toll & Cavanaugh,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 2, 1962:

This is an appeal by the defendants from a final decree in equity in favor of Zampetti, plaintiff-appellee, in a stockholder derivative action brought in behalf of Mobile Merchandising Units, Inc. (Mobile), against individual defendants, Cavanaugh and the Conways, and corporate defendants, Mr. Softee, Inc. (Softee) and related enterprises.

Early in 1954, Zampetti conceived the idea to produce and promote a mobile soft ice cream truck on a national franchise basis. In order to determine what insurance was necessary on such an item, he called the defendant Conway, his insurance agent. In the course of the conversation, Conway asked plaintiff whether he would be interested in financial backing, and plaintiff replied that he would.

Subsequently, a meeting was held between Zampetti and defendants William Conway and Patrick Cavanaugh at which plaintiff outlined his plans and ideas. Following the meeting, the three men orally agreed to the following: (1) To associate themselves in the business of the promotion, assembly, sale and national franchising of mobile soft ice cream units; (2) that Zampetti should devote his full time to the project, and for this he would receive a salary of $100 per week; (3) that Cavanaugh would initially lend the corporation up to $25,000 and that Zampetti, Conway and Cavanaugh would thereafter share equally in any profits; (4) that, if the enterprise failed, plaintiff would sign over his equity in the proposed corporation and its assets so as to minimize the loss of the financial back-

ers; and finally, (5) that each would own a one-third interest in whatever enterprises were formed as a result of the development and growth of the soft ice cream mobile business.

To implement the above agreement, Mobile, a Pennsylvania corporation, was formed. The initial capital was stated to be $600, and the three parties were the incorporators and directors of Mobile. Each subscribed to two shares of stock for which both Conway and Cavanaugh paid cash, while Zampetti paid with his services. Conway was elected president; Cavanaugh, vice-president and treasurer, and Zampetti, secretary. None of the parties received their share certificates at that time.

Although single soft ice cream units had been produced before, Zampetti's ideas of mass producing and marketing these units were original, and completely novel to Cavanaugh and Conway. Thereafter, Zampetti worked on an experimental unit which was eventually completed but which he later scrapped, stating that it "stunk".

Subsequently, a workable design was fashioned by Zampetti and was in the process of completion when a serious rift began to develop between Zampetti and Conway. Zampetti felt that Conway, who had been assigned the business and financial responsibilities of the enterprise, was not fulfilling his duties, while Conway was dissatisfied with plaintiff's efforts in assembling a workable unit. On several occasions, plaintiff threatened to quit the enterprise. Zampetti alleges he did so to place pressure on Conway to fulfill his obligations to the company.

Finally, Zampetti and Conway had another argument during a phone conversation, and plaintiff hung up and left Mobile's garage. Attempts by plaintiff to have Cavanaugh conciliate these internal problems

failed. The same day, plaintiff removed all of his tools from the garage, allegedly to return them to a friend from whom he had borrowed them and who had requested their return. Plaintiff continued to return to the garage until the lock was changed on the door. Around this time, Conway obtained possession of unit plans and blueprints which Zampetti claims he had made, but which defendants claim were mere standardized materials.

Subsequently, Zampetti was removed without notice as an officer and director of Mobile, by Conway and Cavanaugh acting as majority stockholders and directors. James F. Conway, the brother of William Conway was elected secretary of Mobile in plaintiff's place.

Plaintiff returned to the Mobile garage shortly thereafter and was informed by Conway that Mobile was not going to build any more trucks and in fact was going out of business. Thereupon, plaintiff asked Conway what papers he had to sign to turn over his equity to Cavanaugh in accordance with the pre-incorporation agreement. Conway replied that Zampetti had not signed anything to come in, and that he did not have to sign anything to get out. Plaintiff thereupon obtained another job. Overtures of reconciliation made at this time by plaintiff to Conway were unsuccessful.

One month later, Mobile assembled what was termed by Conway as a "terrific unit". This vehicle was basically the unit designed by Zampetti and consisted entirely of component parts ordered by him. There is very little difference between this unit and the Mister Softee units which were running in 1960.

Although counsel for Mobile informed Zampetti at this time that Mobile was operating only this single unit (in order to recoup some of the losses), Mobile was actively producing and offering trucks for distributorship or franchise. When Zampetti subsequently learned through a newspaper advertisement that

Mobile was still in operation, he immediately went to Conway and demanded his interest in the company, but was told that his services were no longer required, and that it was too late for him to get a share in the business.

Zampetti promptly brought suit. Within days, the individual defendants executed articles of incorporation for the formation of Softee. The articles were virtually identical with those of Mobile in corporate purpose and capitalization. Actually, the Softee operation differed from Mobile only in that it was carried on in the new name. Defendants allege that the change in name stemmed from the policy they had recently formulated to convert the business from one of outright sales of trucks to that of franchising the vehicles to independent operators. To implement this change, they considered it imperative to change the company name, since they believed both that it would be disastrous from a business standpoint for the same firm (Mobile), which had been selling the trucks, to begin suddenly to offer them to competitors on a franchise plan only; and that Mobile would not have been able to obtain the requisite bank credit because of its shaky financial situation. However, the evidence shows that a few days before they were served with notice of suit, defendants ordered in the name of *Mobile* twenty-five truck bodies for future delivery. Moreover, in financing Mobile, the bank concerned relied primarily on the personal guarantee of Cavanaugh. A bank officer testified that so long as Cavanaugh backed any loan, it would have been irrelevant to the bank whether the loan was taken in the name of *Mobile* or Softee. At no time during its operation was Mobile insolvent in the commercial sense, since it could and did pay its trade liabilities as they matured.

Following Softee's incorporation, all of the business hitherto carried on by Mobile went to Softee, and Mo-

bile was, to all intents and purposes inoperative, although never formally dissolved.

Plaintiff's suit in which he claimed a one-third stock interest in Mobile resulted in the parties entering into a consent decree whereby plaintiff received his two shares in Mobile and was given an accounting of the financial status of that corporation. Plaintiff then instituted this derivative action wherein the chancellor found that Softee was formed by the defendants in bad faith: (1) to abandon fraudulently the business opportunities of Mobile and divert the same to Softee and (2) to exclude the plaintiff, a one-third owner of the equity interest in Mobile, from participating in the management and profits of Mobile. Therefore, the chancellor appointed a receiver for Mobile and the defendants were each ordered to turn over one-third of their stock interest in Softee and related corporations to Mobile, and to account to Mobile as constructive trustees regarding the earnings and profits of these enterprises.

Defendants contend without merit that plaintiff had withdrawn as a shareholder of Mobile. Zampetti's status as a stockholder of Mobile was conclusively determined by the earlier proceedings which culminated in the consent decree, awarding him two shares of Mobile stock. Although a consent decree is not a legal determination by the court of the matters in controversy, *Universal Builders Supply, Inc. v. Shaler Highlands Corp.*, 405 Pa. 259, 265, 175 A. 2d 58 (1961), it binds *the parties* with the same force and effect as if a final decree has been rendered after a full hearing upon the merits, *Baran v. Baran*, 166 Pa. Superior Ct. 532, 537, 72 A. 2d 623 (1950). The fact that without the consent of the parties the court might not have rendered the judgment does not affect its effect as res judicata. Annot. 2 A.L.R. 2d 514, 528 (1948). Were this not so, a consent decree would have little value. The defend-

ants cannot in this proceeding detract from the conclusiveness of the consent decree.

Consequently, appellant's reliance on *Carr v. Carr O'Brien Company*, 386 Pa. 196, 125 A. 2d 607 (1956), is unjustifiable. The sole issue in *Carr* was whether the plaintiff had, by his words and actions, effectively withdrawn from the corporation. In fact, the *Carr* decision is more favorable to plaintiff than to defendant since the court there permitted *Carr* to assert his appraisal rights as a minority stockholder notwithstanding the determination that he had withdrawn from the corporation. While *Carr* would have been relevant in the stage of this litigation wherein Zampetti's rights as a stockholder were at issue, the consent decree resolved this question, and it is not presently before us. *Carr*, therefore, is inapposite to the present case.

The finding that a stockholder has not abandoned the corporation is not, however, necessarily determinative of whether he may sue on behalf of the corporation. This raises the basic issue to be decided by this appeal: Whether Zampetti by his words and actions released defendants Conway and Cavanaugh of the fiduciary duty owed to him as a stockholder in Mobile, thereby precluding him from bringing this derivative action on behalf of that corporation.

This is a question of first impression before this court. Although stockholders have long had the power to ratify the acts of officers and directors which they themselves could have lawfully authorized, *Chambers v. Beaver-Advance Corp.*, 392 Pa. 481, 486, 140 A. 2d 808 (1958), there is no authority on the issue of whether a minority shareholder, such as Zampetti, can give a binding consent to acts of majority shareholding officers and directors of a corporation which constitute a breach of the duties owed by them to the minority. Free of its corporate setting, the question here is similar to the issue of whether a cestui que trust can

consent to a breach of duty owed to him by the trustee. Consequently, an examination of the analogous principles of trust law is helpful.

This court has consistently adhered to the position of Restatement (2d), Trusts, §216 (1959), that a beneficiary who consents to an act or omission by the trustee which would constitute a breach of trust cannot hold him liable for the consequences of the act or omission if the beneficiary had full knowledge of all relevant facts and of his legal rights, and if his consent was not induced by any improper conduct of the trustee. See *Ward Estate,* 350 Pa. 144, 38 A. 2d 50 (1944), and *Strawbridge's Estate,* 322 Pa. 406, 185 Atl. 726 (1936). What constitutes consent, affirmance or acquiescence of a fiduciary's unauthorized conduct is a mixed question of fact and law which must in each case depend largely upon its own circumstances. *Casani's Estate,* 37 Pa. D. & C. 182 (1940), reheard, 39 Pa. D. & C. 232 (1940), aff'd, 342 Pa. 468, 21 A. 2d 59 (1941). Express requests, subsequent approval, participation in the proper activity or acceptance of the benefits of the breach will estop a trust beneficiary from holding the trustee accountable for his breach. See cases cited above.

We are of the opinion that the rules which have long prevailed in the trust field are applicable with equal force in this case. Considering only those facts which are relevant to the narrow issue before us, in our opinion, these facts must be resolved in favor of Zampetti. While it is true that Zampetti walked out of the garage and took his tools after the argument with Conway, the evidence clearly indicates that he sought to conciliate the differences between him and the defendants. Where there is any trace of consent, affirmance or acquiescence to Conway's or Cavanaugh's conduct after the final altercation, such response was induced by deceit, lack of candor or misrepresentation

by the defendants. Accordingly, we hold that there was no consent by Zampetti to Conway's or Cavanaugh's breach of the fiduciary duties due him as a stockholder. Reverting to our trust analogy, "consent" induced by the improper conduct of the trustee is not consent at all. Restatement (2d), Trusts, §216(c) (1959).

Appellants do not contest Zampetti's contention that they breached their fiduciary duty to Mobile by usurping corporate opportunities in contravention of §408 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-408, except to say that at the time of the alleged breach Mobile was in no financial position to avail itself of any opportunities, and that they (Conway and Cavanaugh) *were Mobile.*

Since the first point was correctly decided below against the defendants and we have just determined the second contention to be erroneous, we hold, therefore, in accordance with the lower court's opinion, that the appellants usurped the corporate opportunities which were rightfully *Mobile's* and thereby breached their duty to it, and, derivatively, to plaintiff.

Decree affirmed at appellants' cost.