**RESOURCES FOR HUMAN DEVELOPMENT, INC., et al.**

**v.**

**William J. FURBER, Borough Manager and Building Inspector, et al.**

**Civ. A. No. 74-768.**

United States District Court,
E. D. Pennsylvania.

Jan. 22, 1975.

**12**

Robert E. Slota, Bryn Mawr, Pa., for plaintiffs.

Morris H. Sheer, Daniel B. Michie, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM

BECHTLE, District Judge.

The above-captioned class action has been commenced by three non-profit corporations and 15 individual plaintiffs to obtain relief from the alleged systematic exclusion of mentally retarded adults from the communities named as defendants herein. In essence, the complaint alleges that the defendants have effectively deprived mentally retarded adults of the constitutional right to live as a group in a residential dwelling by the arbitrary and capricious application of various provisions of local building and zoning ordinances. Invoking the jurisdiction of this Court pursuant to 28 U. S.C. § 1331(a) and 28 U.S.C. § 1343, the plaintiffs seek declaratory and injunctive relief. Presently before the Court is the defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

A detailed recitation of the relevant facts is necessary in order to properly focus upon the complex issues raised by defendants' motion to dismiss. The property involved in this litigation is a single-family dwelling located at 428 Essex Avenue in Narberth, Pennsylvania. Plaintiff Resources for Human Development Inc. ("Resources"), purchased the subject property for the purposes of operating a "group home" for mildly retarded adults. Because the property was located in a residential zoning district restricted to occupation by a single family, it was necessary for the owners to apply for a special exception. In November, 1972, Resources applied to the Narberth Board of Adjustment for a special exception under the applicable zoning ordinances of the Borough of Narberth. The application was filed under Section 301(2) and (3) of the Narberth Zoning Ordinance which provides that a building may be used for "educational, religious or philanthropic use" or for a "hospital or sanitarium" when authorized as a special exception. The Narberth Board of Adjustment denied the requested special exception.

On March 8, 1973, Resources appealed the decision of the Board of Adjustment to the Common Pleas Court of Montgomery County (Civil Division No. 73–2822). After a hearing and a remand to the Board of Adjustment for further testimony, the Common Pleas Court on December 19, 1973, directed the Narberth Board of Adjustment to grant the requested special exception and "to impose appropriate conditions and safeguards to insure compliance with fire, sanitation, health and safety regulations of the borough and state government applicable to institutional use." [1] In accordance with the State Court order of December 19, 1973, the Board of Adjustment granted the requested special exception on January 21, 1974. The order of the Narberth Board of Adjustment granting the special exception permitted the subject premises to be used as an institution for the care of mildly mentally retarded adults provided that the dwelling was "made to conform with all fire, sanitation, health and safety regulations of the borough and state governments applicable to institutional use." On February 21, 1974, Resources appealed from the January 21, 1974, order of the Board of Adjustment to Montgomery County Common Pleas Court.

Subsequent to the granting of the special exception, Resources filed an application for a building permit with defendant William J. Furber, Borough Manager and Building Inspector. The application requested permission from the Borough to make certain alterations to the premises located at 428 Essex Avenue. The Building Inspector denied Resources' application for a building permit on the grounds that the plans and specifications submitted with the application indicated that the altered structure would not be fireproof. The determination by defendant Furber that it was necessary for the dwelling to be of fireproof construction was based on Furber's application of the order of the Board of Adjustment to the Narberth Building Code, Ordinance No. 359. As outlined above, the Board granted the special exception provided that the house be made to conform to local and state health and safety regulations "applicable to institutional use." Section 300.3 of the Narberth Building Code provides in substance that institutional buildings are those buildings in which persons are harbored to receive medical, charitable or other care, "including among others, hospitals, asylums, sanitariums, homes for the aged, prisons and reformatories." Defendant Furber concluded that of the uses enumerated in Section 300.3 of the Building Code (which section is entitled, "Institutional Buildings") the one most applicable to the plaintiffs' proposed use of the dwelling was "asylum." The Building Inspector then referred to Section 403.2 of the Building Code, which requires asylums to be of fireproof construction. Because the plans submitted by Resources did not provide for the use of fireproof construction, Furber denied the application for a building permit.

On March 27, 1974, plaintiffs instituted the instant action, alleging, *inter alia*, that the Building Inspector's classification of the single-family dwelling owned by the corporate plaintiffs as an "asylum" was arbitrary and without foundation in fact or reason. Plaintiffs' claim of arbitrariness is based upon the contention that mildly mentally retarded adults are not, by reason of their retardation, less capable of functioning within dwellings safe and suitable for nonretarded persons and that the requirement of particular housing accommodations constitutes the denial of equal protection of the laws in violation of the Fourteenth Amendment.

The principal contention raised by the defendants in support of the motion to dismiss the complaint is that the Court should abstain from resolving the question of the constitutionality of the

---

1. See, Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint.

Building Inspector's action in light of the litigation pending in the Common Pleas Court of Montgomery County. The Court is of the position that abstention is appropriate under the facts and circumstances of this case, but for slightly different reasons than those advanced by the defendants.

In response to the appeal filed by Resources from the Board of Adjustment's initial denial of the request for a special exception, the State Court directed the issuance of the special exception subject to the condition that the dwelling be made to conform with fire, safety, and health regulations of the borough and state applicable to institutional use. Pursuant to the State Court order, the Board of Adjustment granted the special exception and imposed upon the applicant the identical conditions and requirements contained in the court order. The restrictions relative to compliance with fire and safety regulations applicable to institutional use did not originate from the Borough of Narberth but were explicitly set forth in the State Court order of December 19, 1973. Similarly, defendant Furber's denial of the building permit was not a product of his own unfettered discretion. The Building Inspector reviewed the plans and specifications submitted by Resources in light of the orders of the State Court and the Narberth Board of Adjustment. Furber's designation of the dwelling as an "asylum" was based upon and limited to the classification of structures enumerated in Section 300.3 of the Building Code, entitled "Institutional Buildings." The requirement of fireproof construction is set forth in Section 403.2 which states essentially that asylums, hospitals and nurseries "shall be of fireproof construction."

Were this Court to grant the relief requested by the plaintiffs, we would in effect be overruling the order of the Common Pleas Court of Montgomery County. In granting the special exception, the State Court imposed the condition concerning conformity with institutional fire and safety regulations. The Borough of Narberth and the Building Inspector did no more than follow the prescriptions of the State Court. Plaintiffs' source of relief is properly in the State Courts wherefrom came the restrictions as to the use of the subject dwelling. Indeed, the above conclusion finds support in the fact that plaintiffs have filed an appeal from the State Court order.[2]

In arriving at the conclusion that the issue of the validity of the restrictions imposed on the Narberth property should be resolved in the State Court, this Court has placed considerable emphasis on the existence of state appellate procedures whereby persons may appeal from an adverse decision of a local zoning board to the Court of Common Pleas and then to the Commonwealth Court of Pennsylvania. Sections 11001 through 11011 of 53 P.S. permit a landowner who desires to seek review or correction of the decision of a local board to appeal directly to the Court of Common Pleas. If a landowner is aggrieved by a ruling of the Common Pleas Court, an appeal may be taken to the Pennsylvania Commonwealth Court. The Pennsylvania Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.-402(4), vests in the Commonwealth Court exclusive jurisdiction of appeals from final orders of the Courts of Common Pleas in all proceedings arising under any borough zoning code. P.L.E. Municipal Corporations § 468; Campbell v. Zoning Hearing Board of Plymouth Twp., 10 Pa.Cmwlth. 251, 310 A.2d 444 (1973); Boulevard Land Corporation v. Zoning Board of Adjustment of the City of Philadelphia, 8 Pa.Cmwlth. 584, 303 A.2d 234 (1973).

In that the plaintiffs have already filed an appeal in Common Pleas Court

---

2. As previously mentioned in this Memorandum, the appeal of Resources from the December 19, 1973, order of the Common Pleas Court of Montgomery County is pending as of this date in the same court.

and have the statutory right to further appeal to the Commonwealth Court, it would be seriously inimical to the notions of judicial comity and federalism for this Court to render a decision which would effectively overturn a State Court ruling. While the Building Inspector personally ruled upon the application for the building permit, it was the order of the State Court which required the dwelling to conform the fire and safety regulations applicable to institutional use. The case of Lynch v. Snepp, 472 F.2d 769 (4th Cir. 1973), involved the granting of a Federal injunction which had the effect of restraining in part the enforcement of a state injunction entered to control access to various public schools beset by violence and disruption. The Court of Appeals, in reversing the District Court's grant of a preliminary injunction, held that there was a "presumption against federal interference" which is overcome only by a showing that the moving parties will suffer irreparable injury and that there is no adequate remedy at law. 472 F.2d at p. 774. It cannot be argued that the plaintiffs herein do not have an adequate remedy at law. As previously discussed, plaintiffs may appeal the order of the Common Pleas Court to the Pennsylvania Commonwealth Court and, if necessary, the Pennsylvania Supreme Court.[3] Nor does it appear on the face of the complaint that plaintiffs will suffer irreparable harm unless this Court intervenes.

The facts and circumstances of this case do not permit the application of the traditional or classical abstention principles. We are not presented with an unresolved question of state law which only the State Courts can authoritatively construe and which may by virtue of such an authoritative construction avoid the decision of a Federal constitutional issue. E. g., Conover v. Montemuro, 477 F.2d 1073, 1079 (3rd Cir. 1973). Nor are we confronted with a request by a defendant to intervene in pending state criminal proceedings, where abstention would be appropriate absent a showing of bad faith or harassment. E. g., Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Lewis v. Kugler, 446 F.2d 1343 (3rd Cir. 1971). What we are faced with here is an attempt by plaintiffs to utilize the Civil Rights Act, specifically 42 U.S.C. § 1983, as a substitute for the right of appeal in State Court. Having initiated the state judicial process by appealing first from the Board's denial of the request for a special exception and then from the order of the Common Pleas Court of Montgomery County, plaintiffs must pursue their claims through the State Courts. Roy v. Jones, 484 F.2d 96 (3rd Cir. 1973); Coogan v. Cincinnati Bar Assocaition, 431 F.2d 1209 (6th Cir. 1970).

■ Furthermore, the interpretation and application of a municipal building code to a particular dwelling necessarily presents an issue of state and local concern. While, technically, there is no unresolved question of state law raised here, the implementation of a State Court order granting a special exception and the compliance or noncompliance of a structure with a local building code clearly involve questions more properly resolved on the state and local level. Reichman v. Pittsburgh National Bank, 465 F.2d 16 (3rd Cir. 1972).

For the reasons enumerated above, defendants' motion to dismiss will be granted.

---

3. During oral argument heard on defendants' motion to dismiss, counsel for the plaintiffs stated to the Court that one of the principal reasons for the commencement of an action in Federal Court was the interminable delay concomitant with litigation in State Court. However, in response to a series of questions propounded by the Court, counsel conceded that no affirmative action had been taken to hasten the disposition of plaintiffs' appeal now pending in Montgomery County Common Pleas Court.