ENVIRONMENTAL AID, INC., Plaintiff,

v.

Dr. Maurice K. GODDARD, Kenneth Young, Edwin Manbeck, Ralph Matter, Dwight Ralph, Stephen Curran, Robert Stallbaum, William H. Williams, Robert Cochran, Marvin A. Fein, Richard S. Ehmann, Alan Welsh, Thomas Burke, Defendants.

Civ. A. No. 76–700.

United States District Court, W. D. Pennsylvania.

May 19, 1977.

John A. Conte, Conway, Pa., for plaintiff.

Anthony P. Picadio, Pittsburgh, Pa., for defendants.

## OPINION

MARSH, District Judge.

This civil rights action was brought by plaintiff Environmental Aid (AID) pursuant to 42 U.S.C. § 1983 with jurisdiction invoked under 28 U.S.C. § 1343. AID contends that the 16 named defendants [1] under color of state law without due process have deprived it of "its constitutional property rights secured by the Constitution" and have caused it damages.

The complaint in 29 paragraphs and numerous subparagraphs seems to assert that the defendants, acting jointly and severally within their official capacities as secretary of the Department of Environmental Resources (DER) of the Commonwealth of Pennsylvania and employees of DER, deprived AID of its industrial waste treatment plant. AID claims defendants' actions were "arbitrary, abusive and illegal acts" exercised in an "oppressive and discriminatory manner" without a "qualitative and quantative (sic) investigation." It is alleged in the complaint (¶ 28) that these acts deprived AID of due process of law and due [just] compensation in violation of the Fifth and Fourteenth Amendments of the Constitution.

The remaining 13 defendants moved to dismiss the action for the following reasons:

(1) Failure to state a claim. Rule 12(b)(6), Fed.R.Civ.P.

(2) All defendants are immune from suit.

(3) The court lacks or should not exercise jurisdiction over the subject matter.

(4) Plaintiff failed to join necessary or indispensable parties. Rule 12(b)(7) and Rule 19 Fed.R.Civ.P.

The defendants submitted an affidavit setting forth legal actions brought by the Commonwealth of Pennsylvania against AID and legal actions brought by AID against the Commonwealth in the Common

---

1. The action against Ray Walker, Howard G. Luley and L. Rollerman was dismissed for lack of prosecution.

Pleas Court of Lawrence County. Two of these legal proceedings are pending. The facts and exhibits set forth in the affidavit were not denied by AID. No counter-affidavit was submitted by AID.[2] Hence, the defendants' motion to dismiss will be treated as a motion for summary judgment. Rule 12(b) Fed.R.Civ.P.

For the reasons hereinafter set forth, it is the opinion of the court that summary judgment should be granted in favor of the defendants.

It appears from the affidavit submitted by the defendants that the Commonwealth, after warning AID about polluting the water under and above ground, filed a Complaint in Equity against AID in May, 1972, in the Court of Common Pleas of Lawrence County requesting an injunction restraining AID from depositing industrial wastes in its impoundments which were polluting the water in the vicinity, and requiring AID to remove all such wastes pursuant to the Pennsylvania Clean Streams Law, 35 P.S. § 691.1 *et seq.* This law declares putting any substance into any waters of the Commonwealth resulting in pollution is a nuisance and criminal and civil penalties are specified. See §§ 691.401, 691.602, 691.605, 691.610.

The following legal proceedings ensued. A Consent Decree was entered in June, 1972.[3] In December, 1973, an Amended Consent Decree was entered.[4]

AID attempted to comply with the decrees but failed to eradicate the pollution.

On July 20, 1973, a Petition for Contempt was filed by the Commonwealth against AID[5] which resulted in a third Consent Decree entered in October, 1973, called a stipulation.[6] On the day the third Consent Decree was entered, the President of AID, Mr. Hill, and its Secretary-Treasurer,

Mr. Davidson, were present in court with the attorney for AID. This decree contained nine stipulations which were read by the judge and no objection was made. Declarations in open court carry a strong presumption of verity. *Cf. Blackledge, Warden v. Allison,* —— U.S. ——, ——, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). It was agreed, *inter alia,* that the unlawful pollution of the water should be abated by the Commonwealth and that a Master should be appointed to liquidate the assets of AID, pay its debts, and reimburse the Commonwealth for the costs of abating the pollution.[7]

In July, 1974, AID filed a "Petition for Opening Judgment"[8] seeking to set aside the October, 1973 Consent Decree. The Petition to Open averred, *inter alia,* that the Commonwealth through its agency DER, and the Environmental Pollution Strike Force, had deprived AID of its property without due process, without equal protection, in violation of the Federal and State Constitutions, pursuant to unlawful coercion and oral threats by agents of the Commonwealth. In addition, the petition requested that the Master appointed to liquidate the assets of AID should cease and desist from his duties and return to AID all assets and monies realized from the liquidation of AID which he held in escrow. It also requested restitution of monies paid by AID or its officers and restoration of AID's business at its impoundment location pending final adjudication of the Petition to Open. A rule to show cause was entered on July 25, 1974, returnable August 20, 1974.

At the argument on the motion to dismiss held March 29, 1977, in this federal court, we were informed that the Petition for Opening Judgment was still pending in the state court.

---

2. Plaintiff stated, in its brief received on March 15, 1977 (at page 4), that an affidavit signed by AID's officers would be filed forthwith. To date no affidavit has been submitted on behalf of the plaintiff.

3. Defendants' Affidavit Ex. 2.

4. Id. Ex. 3.

5. Id. Ex. 9—Docket Entry of July 20, 1973.

6. Id. Ex. 4.

7. Id. Ex. 4 pp. 2–6.

8. Id. Ex. 5 p. 3.

Strangely, and perhaps inconsistently, in October, 1974, AID filed a "Petition to Comply with Order of Court"[9] requesting that the Master and the Commonwealth Department of Environmental Resources comply with the Consent Decree of October, 1973 and pay certain alleged liabilities of AID as required by that decree. The Court of Common Pleas by opinion and order dated February 26, 1976, dismissed this Petition.[10]

In July, 1975, AID filed a Petition for Contempt[11] against the Commonwealth and DER officials and its attorney for violating and non-compliance with the Consent Decree of October, 1973. We were informed that this petition, which also appears to be inconsistent with the Petition to Open the Consent Decree, is still pending in the state court.

It appears that the pollution problem has been abated by the Commonwealth at a cost of over $300,000, and AID's treatment plant was returned to it on October 14, 1975.

The complaint (¶ 25) alleges that the "treatment plant and site are now useless because the plant is gutted and the impoundments are non-functional."

### I

■ Notwithstanding the valid Consent Decree of October, 1973 (Defendants' Affidavit, Ex. 4), the pending legal proceedings in the state court, involving real property, business rights, and the Pennsylvania Clean Streams Law, AID is now attempting in its § 1983 civil rights action to obtain damages in this federal court from 13 DER employees for alleged illegal procedure, threats and coercion in obtaining the consent decrees in the state court. Since the state court has already taken jurisdiction of the res it should exercise that jurisdiction to the exclusion of other courts including this

federal court.[12] *Princess Lida v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *Jacobs v. DeShetler*, 465 F.2d 840, 842–843 (6th Cir. 1972). The factors counseling against federal court jurisdiction are several. They include the legal proceedings in the state court begun in 1972; the right of the state court to interpret and enforce the Pennsylvania Clean Streams Law; the state court's familiarity with the actions of the DER employees in attempting to enforce that law; and the existence of valid consent decrees entered by the state court, none of which have been vacated. Moreover, exclusive control over the subject matter is necessary to determine whether or not to open the Consent Decree of October, 1973 (Ex. 4). In the light of the exceptional circumstances thus disclosed and the absence of any material issue of fact, summary judgment should be entered in favor of the defendants in this federal court and the case dismissed. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

### II

■ Also, we think AID is bound by the terms of the consent decrees. *United States v. Armour and Co.*, 402 U.S. 673, 681, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971). All three consent decrees were entered in 1972 and 1973. No action was taken by AID to promptly repudiate any of them. *Cf. Yarnall v. Yorkshire Worsted Mills*, 370 Pa. 93, 87 A.2d 192 (1952); *Baumgartner v. Whinney*, 156 Pa.Super. 167, 39 A.2d 738 (1944). It was not until July 24, 1974, that AID filed its Petition to Open Judgment (Ex. 5, p. 3) in the state court seeking to vacate the October, 1973 Consent Decree (Ex. 4) containing the nine stipulations. Inconsistently thereafter, AID sought to enforce the October, 1973 Consent Decree. See Exhibits 6 and 7.

---

9. Id. Ex. 6.

10. Id. Ex. 8.

11. Id. Ex. 7.

12. The res consisted of AID's real estate and business which were placed in custody of a Master for liquidation and abatement of the pollution in the third Consent Decree (Ex. 4) which AID petitioned the state court to open (Ex. 5, p. 3) and also to enforce. (Exs. 6, 7).

## III

Essentially, the Petition to Open contains the underlying facts and legal contentions as contained in AID's § 1983 action filed in this federal court, i. e., unlawful deprivation of its property without due process pursuant to conclusory allegations of unlawful coercion and threats of agents of the Commonwealth, and seeking restoration or compensatory and punitive damages pursuant to the Constitutions of the United States and Pennsylvania.

■ It is our opinion that the state court in this pending proceeding has precisely the same problems presented to this federal court under § 1983, and is as competent as any federal court to determine whether AID's constitutional rights have been violated by the Commonwealth and its agents, and if so, to order restitution and compensation. *Robb v. Connolly*, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542 (1884).

## IV

In effect AID wants this federal court to set aside the consent decrees of the state court on the grounds that they were illegally obtained by threats and coercion and that the Commonwealth falsely accused AID of polluting the water in the vicinity.

■ In our opinion, § 1983 may not be used by AID to have a federal court review the underpinnings of the valid consent decrees entered by the state court in enforcing the police power of the Commonwealth as set forth in the Clean Streams Law. *P. I. Enterprises, Inc. v. Cataldo*, 457 F.2d 1012 (1st Cir. 1972); *Rodes v. Municipal Authority of the Borough of Milford*, 409 F.2d 16, 17 (3rd Cir. 1969); *Cf. Roy v. Jones*, 484 F.2d 96 (3rd Cir. 1973); *Resources for Human Development, Inc. v. Furber*, 387 F.Supp. 11 (E.D.Pa.1975). Section 1983 should not be utilized to appeal a valid state court decree to a federal district court. AID should pursue its claims for damages through the state courts including the appellate courts before appealing to this federal court. *State of New Jersey v. Chesimard*, 555 F.2d 63 (3rd Cir. 1977).

In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975), a civil rights action which sought to enjoin a civil proceeding in a state court before an appeal had been taken, the Court stated:

". . . we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts."

And as stated in *Chesimard, supra,* page 911:

"Nor does the withholding of federal relief under these circumstances do violence to the traditional notion that exhaustion of state judicial remedies is ordinarily not a prerequisite to relief sought under 42 U.S.C. § 1983, as it is to relief sought under 28 U.S.C. § 2254, *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). 'By requiring exhaustion of state appellate remedies for the purpose of applying *Younger,* [*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669], we in no way undermine *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). . . . *Monroe v. Pape* had nothing to do with the problem presently before us, that of the deference to be accorded to state proceedings which, already have been initiated and which afford a competent tribunal for the resolution of federal issues.' *Huffman, supra,* 420 U.S. at 609 n.21, 95 S.Ct. [1200] at 1211."

If summary judgment were to be denied, it would encourage any litigant dissatisfied with a state court decree involving state officials acting under color of law to appeal by bringing a civil rights action in a federal district court without exhausting state appellate remedies.

■ It is our opinion that the valid state court consent decrees have the effect of judgments in which plaintiff agreed it was polluting the Commonwealth's waters, agreed that its assets should be liquidated

to pay for the elimination of the unlawful conditions,[13] and all the other provisions which appear in the final Consent Decree (Ex. 4). We think that before the plaintiff can sue the agents of the Commonwealth for damages under § 1983, or, indeed, before the plaintiff can sue the defendants in the state court for damages, it must first have the consent decrees, and especially the Decree of October, 1973 (Ex. 4), vacated by the court which entered it. If the Lawrence County Common Pleas Court should open or vacate the Consent Decree of October, 1973 (Ex. 4), it could award, if justified, exactly the same damages plaintiff seeks in this court.

■ The Consent Decree of October, 1973 (Ex. 4) is a valid judgment which is conclusive between the Commonwealth and AID in a subsequent action between them, or between AID and the Commonwealth's DER employees upon the issues actually litigated or, as in this case, the issues actually consented to. Restatement of Judgments § 1, 46 (1942). The determination in the Consent Decree of October, 1973 (Ex. 4) is conclusive between the parties i. e., AID and the Commonwealth or its employees, in a different cause of action. Restatement § 46 Comment c. See also Restatement § 68 Comment j. Insofar as other facts are alleged, if the state court opens and vacates the October Consent Decree (Ex. 4) that court is competent to decide any federal constitutional issues that may arise, or any other facts which have not been litigated.

The rule as to consent decrees is set forth in *Zampetti v. Cavanaugh*, 406 Pa. 259, 265, 176 A.2d 906, 909 (1962) as follows:

"Although a consent decree is not a legal determination by the court of the matters in controversy, *Universal Builders Supply, Inc. v. Shaler Highlands Corp.*, 405 Pa. 259, 265, 175 A.2d 58 (1961) it binds *the parties* with the same force and effect as if a final decree has been rendered after a full hearing upon the merits. *Baran, et al. v. Baran, et al.*, 166 Pa.Super. 532, 537, 72 A.2d 623 (1950). The fact that without the consent of the parties the court might not have rendered the judgment does not affect its effect as res judicata. Annot. 2 A.L.R.2d 514, 528 (1948). Were this not so, a consent decree would have little value."

In *Baran v. Baran*, 166 Pa.Super. 532, 537, 72 A.2d 623, 625 (1950), the court stated:

"A decree entered by consent of the parties is so conclusive that it will be reviewed only on a showing that an objecting party's consent was obtained by fraud or that it was based upon a mutual mistake."

■ Hence, until such time as the Consent Decree of October, 1973 (Ex. 4) is vacated, that Decree and the stipulations contained therein remain in full force and effect, and AID is collaterally estopped from contending in its civil rights action in this court that the defendants illegally procured it. *International Org. M., M. & P. v. International Org.*, 456 Pa. 436, 440–441, 318 A.2d 918, 920–921 (1974).

V

■ Even if summary judgment were not appropriate, dismissal would be granted for defendants' Reason No. 1, allowing a reasonable time for amendment. The allegations contained in the complaint with respect to the actions and conduct of the individual defendants in violating AID's constitutional rights are vague, broad and conclusory. A conspiracy is not alleged although it is stated that the defendants acted jointly and severally. In this circuit, plaintiffs in civil rights cases are required to plead facts with specificity especially, as here, where the complaint is drafted by competent and experienced counsel. The specific illegal acts of each defendant who participated jointly and severally in violating AID's constitutional rights must be averred. The facts on which the claim is

13. The Commonwealth has not been reimbursed by plaintiff for the cost of eliminating the pollution in excess of $300,000.

based must be stated and the unlawful conduct of each defendant must be spelled out. *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922 (3rd Cir. 1976); *Curtis v. Everette,* 489 F.2d 516, 521 (3rd Cir. 1973); *Gray v. Creamer,* 465 F.2d 179, 182 n.2 (3rd Cir. 1972); *Kauffman v. Moss,* 420 F.2d 1270 (3rd Cir. 1970); *Negrich v. Hohn,* 379 F.2d 213 (3rd Cir. 1967); *United States, ex rel. Hoge v. Bolsinger,* 311 F.2d 215 (3rd Cir. 1962); *Roach v. Kligman,* 412 F.Supp. 521, 524 (E.D.Pa.1976).

As stated by the Third Circuit in *Rodes v. Municipal Authority of the Borough of Milford,* 409 F.2d 16, 17 (1969):

> "[t]he requirement of specificity is particularly important in such a case as this in order that the Civil Rights Act not be misused as a device for federal review of a state court judgment, or for litigating state law claims cognizable only in the state courts."

We point out that the allegation that there was a "lack of qualitative and quantative (sic) investigation on the part of the defendants" suggests negligence by the DER employees under color of law. It is not enough for plaintiff to characterize this negligence as "arbitrary, abusive and illegal acts that lead to the deprivation of AID's property" and then claim this gives rise to a constitutional deprivation. Section 1983 is not designed to be a "font of federal tort law" and the fact that a tort may have been committed by DER officials does not mean that a federal constitutional right has been invaded. *Paul v. Davis,* 424 U.S. 693, 699–701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Howell v. Cataldi,* 464 F.2d 272, 277–279 (3rd Cir. 1972); *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970); *Kent v. Prasse,* 385 F.2d 406 (3rd Cir. 1967); *Christman v. Commonwealth of Pennsylvania,* 275 F.Supp. 434 (W.D.Pa.1967).

Reason No. 2 with respect to immunity would not be disposed of until the facts concerning the conduct of the three Assistants Attorneys General, Secretary Goddard and the other defendant employees of DER are specified or otherwise disclosed.

Reason No. 3 has in effect been granted.

Reason No. 4 in our opinion should be denied.

An appropriate order will be entered.