## United Mine Workers of America v. Nobel

*James T. Davis* and *John M. Purcell*, for plaintiffs. *Thomas A. Bowlen*, for defendants.

FRANKS, *J.*, October 15, 1986 — The instant matter comes before us on defendants' rule to show cause why defendants should no longer be required to maintain health and other nonpension benefits for plaintiffs-represented members and why the consent order of October 28, 1985, should not be modified in conformance therewith. After review of the arguments and briefs filed in this matter, along with a review of the applicable case law, we must deny defendants' petition.

This action was commenced seeking injunctive relief. Plaintiffs requested that defendants be prohibited

from terminating health and other nonpension benefits to plaintiffs' members who had retired. On August 30, 1985, we entered an order dismissing the request for an injunction in lieu of an in-court agreement by the parties to continue medical benefits until October 1, 1985.

On October 28, 1985, a consent order was entered by the parties extending the August 30, 1985, order until the final determination of the case. The consent order also provided that the "health care plan as required by Article 20 of the National Bituminous Coal Wage Payment Agreement of 1981 shall be continued pending a final determination in this case."

Other provisions, not relevant hereto, were also included. A petition for enforcement of the October 28, 1985, order was subsequently dismissed in May of 1986 when defendants agreed to comply.

Subsequent to that order, defendants filed the instant petition to modify. Their claim is based on the expiration of the 1981 Coal Wage Payment Agreement, above, a recent Fourth Circuit Court of Appeals decision, and an arbitrator's award under the agreement which held that under certain circumstances such benefits need not be paid.

The initial question is what standard is applicable to the modification of an interim consent order. A review of the applicable case law has not divulged any case which is directly on point with the one before us. However, it does appear that the law governing consent decrees in equity actions would be applicable to the instant case. While the consent order was not a final determination of the matter, we note that it is analogous to a partial consent decree covering defendants' liability from the October 28, 1985, order until the conclusion of the litigation. As such the laws of equity are applicable.

Under equity practice we find the circumstances offered by defendants for modification of the order to be insufficient. In *Dravosburg Housing Authority v. Dravosburg Borough*, 71 Pa.Commw. 144, 454 A.2d 1158 (1983), the court required the continuation of the level of payments for sewage disposal at a level agreed in a 1964 consent decree. The borough had agreed to accept a fee of 20 percent of total usage from the authority in exchange for the sewage treatment facilities of a particular development. Over the years the development usage rose to 28 percent of total capacity while the payments remained at 20 percent. The borough petitioned the court for a modification of the order based upon the change in circumstance. The trial court modified the order. In overturning the lower court, the Commonwealth Court held, "[t]here is strong support in Pennsylvania law for the . . . contention that in the absence of fraud, accident or mistake a court has neither the power nor the authority to vary or modify the term of a consent decree. *Dravosburg*, at 71 Pa.Commw. 148, 454 A.2d 1161.

This is so even though the passage of time may make the order more onerous on one of these parties:

"[N]o matter how distasteful a consent decree may later turn out to be to the parties, it remains binding upon them and cannot be changed by a court unless amendments thereto are submitted by the parties subject to the decree. The Superior Court of Pennsylvania has held that a consent decree is so conclusive that it wil be reviewed only by a showing that an objecting party's consent was obtained by fraud, or that the decree was based upon *mutual* mistake." *Baran v. Baran*, 166 Pa.Super. 532, 72 A.2d 623 (1950).

*Dravosburg*, at 71 Pa.Commw. 149, 454 A.2d 1161

(Emphasis in original).

Nothing in the circumstances alleged by defendants rise to the level of fraud or mistake. Defendants argue that by paragraph 3 of the consent order no payments were required because the 1981 wage agreement expired in 1984, and therefore Article 20 no longer was enforceable.

This argument ignores several factors. Initially it overlooks paragraph 2 extending the effect of the April 30, 1985, agreement to the termination of litigation. It further ignores the fact that the contract had expired long before the consent order was entered. Thus, defendants were well aware that the old contract language was being incorporated into the consent decree. If we accept defendants' argument, the meaning of paragraph 3 in the October 28, 1985, order would be absurd. There would be no reason for the parties to include it. Indeed the subsequent actions of defendants in agreeing to continue payments in May of this year belie defendants' understanding of the act.

Defendants also argue that the recent Fourth Circuit Court of Appeals decision and an arbitration award which favors their position have changed the circumstances surrounding the consent order. These precedents, if relevant at all, will affect the ultimate determination of the issues before the court. They are not of concern to us today. The only issue presented is whether a court order entered by the agreement of the parties should be modified. If defendants had some suspicion as to the change in the law, they should not have entered the consent order but rather should have taken their chances in court. At the present, defendants have provided no authority for us to change this mutual agreement. Therefore, the petition must be denied.